INTERNATIONAL BUSINESS MA-CHINES CORPORATION, a New York corporation and IBM Credit Corpora-tion, a Delaware corporation, Plain-tiffs,

v.

COMDISCO, INC., a Delaware corporation, Defendant.

Civ. A. No. 11922.

Court of Chancery of Delaware, New Castle County.

Submitted May 31, 1991.
Decided July 2, 1991.

R. Franklin Balotti, and Anne C. Foster, of Richards, Layton & Finger, Wilmington, Paul C. Saunders, and Evan R. Chesler, of Cravath, Swaine & Moore, and Howard Weber, and Morris Waisbrot, of Davis, Markel & Edwards, New York City, for plaintiffs.

A. Gilchrist Sparks, III, and Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Philip W. Tone, Jerold S. Solovy, and Donald R. Harris, of Jenner & Block, Chicago, Ill., for defendant.

## OPINION

CHANDLER, Vice Chancellor.

This suit is based on a dispute over rights in computer equipment. The parties are as follows. International Business Machines Corporation ("IBM") is a well-known manufacturer of, among other things, computer equipment. Plaintiff IBM Credit Corporation ("Credit") is in the business of buying IBM equipment, including computer equipment, and selling or leasing that equipment. Defendant Comdisco, Inc. ("Comdisco") also buys and resells or leases computer equipment. Thus, Comdisco is a competitor of Credit.

One of the machines which IBM produces and in which both Credit and Comdisco deal is the "3090 line" of computers. Each 3090 line computer system consists of one or more processors (which can be

thought of as the "computers" themselves) together with a variety of components including memory components, storage components, "channels" (circuitry that connects the processors and other devices) and other components. Components can be added or deleted from the processor to provide a machine which is most amenable to the needs of the consumer.

The 3090 line was introduced by IBM more than five years ago. Since that time, Credit has purchased a number of these computer systems from IBM and leased them to consumers (the "lessees") not party to this lawsuit. According to the complaint, typically, but apparently not always, these leases between Credit and third parties were pursuant to an agreement drafted by Credit and denominated the "Term Lease Master Agreement" (the "TLMA"). With respect to at least ten of the 3090 line machines leased by Credit to the lessees, the lessees have re-leased some or all of the equipment to Comdisco.[1] The plaintiffs claim that these re-leases to Comdisco have resulted in the breach of the TLMA's entered into between Credit and the lessees in that: (1) the re-lease to Comdisco was in some cases for a term exceeding the term of the lease between Credit and the third parties; (2) Comdisco has in a manner prohibited by the TLMA removed components from machines and; (3) Comdisco has re-leased the computers to third parties and sold some of the components, once again in derogation of the TLMA.[2] Comdisco denies that its actions, or the actions of the lessees in dealing with Comdisco, represent breaches of the TLMA.

To resort to the hoary and simplistic property law analogy of the "bundle of sticks," Credit prior to the execution of each TLMA was the owner of a 3090 line system, holding each stick of the bundle. Pursuant to the TLMA it transferred some quantum of ownership, some of the

"sticks," to third parties, the lessees. Credit claims, however, that the lessees purported to transfer more sticks to Comdisco than they had received from Credit. In fact, Credit claims that Comdisco's use of the re-leased equipment breaches Comdisco's own contracts with the lessees. That is, Credit has asserted that Comdisco, in selling and subleasing the equipment, has purported to transfer more sticks of the bundle to its purchasers and sublessees than the lessees purported to transfer to Comdisco.

Comdisco, on the other hand, contends that it has exerted property rights in the 3090 line equipment consistent with the property interest that it received from the lessees and the property interest that those lessees received from Credit. Thus, reduced to its simplest form, this dispute involves Comdisco and Credit each asserting property rights in a number of 3090 computer systems. The complaint also acknowledges that the third parties (the lessees) have certain rights in the same systems. These claims of ownership rights overlap; the sum of the sticks each party claims to hold is more than those present in the original bundle. The resolution of this dispute must turn on an examination of the contracts between Credit and each third party, and that third party and Comdisco.

Credit characterizes Comdisco's activities with respect to the 3090 systems in question as amounting to conversion, tortious interference with contract (the TLMA's), tortious interference with business relations, breach of contract (that between Comdisco and the lessees) and unfair competition.[3]

There is another, conceptually separate, part of this lawsuit. IBM holds the copyright on certain computer software known as the Licensed Internal Code (the "microcode") which it claims Comdisco has copied and sold. These transfers by Comdisco of

---

**1.** The complaint enumerates ten specific instances of re-lease and alleges that others exist.

**2.** Apparently, all ten cases enumerated involve the same version of the TLMA.

**3.** Credit also seeks to recover for "unjust enrichment." As I understand Credit's claim, however, the "unjust enrichment" count is based on Comdisco's profit as a result of its wrongdoing. That is, this count states a theory of recovery (quasi-contract) rather than a substantive cause of action.

the microcode are not necessarily related to the sale or re-lease of the 3090 line equipment originally owned by Credit which is the subject of that portion of the lawsuit described above. IBM claims that the unauthorized copying and sale of the microcode amount to breaches of contracts between IBM and Comdisco and represent deceptive business practices on the part of Comdisco.[4]

Comdisco has moved to dismiss this action. In addition to raising defenses to each count of the plaintiffs' complaint individually, Comdisco raises a general defense to causes of action pled by Credit, which appears to me at this stage of the proceedings to be quite substantial. With respect to the 3090 line equipment leased by Credit to the lessees and subleased by Comdisco, Comdisco points out that Credit, the lessees and Comdisco all claim property rights in the equipment. These property rights must be determined by an analysis of the contract between Credit and the lessees, the TLMA. Credit, however, has not joined its lessees in this action and, therefore, the rights of these lessees in the computer equipment, should the suit go forward, will be decided in their absence. This, argues Comdisco, could impair not only the rights of the lessees in the equipment but also subject Comdisco to inconsistent obligations (those arising to Credit under this lawsuit and those which might be enforced by the lessees against Comdisco in a subsequent suit). Therefore, argues Comdisco, that portion of this lawsuit based on the 3090 line equipment subleases must be dismissed due to failure to join an indispensable party.

With respect to the portion of the lawsuit based on copying the microcode, Comdisco argues that these two counts of plaintiffs' complaint are nothing more than attempts to impose state law remedies in a situation already completely addressed by the federal copyright laws. Comdisco further contends that these copyright laws expressly prohibit the state law forms of action IBM seeks to employ here and that IBM's action with respect to the copying of the microcode is therefore preempted by the federal copyright laws.

■ Before examining these and the other defenses which Comdisco has raised, however, I must first address the threshold issue present, explicitly or implicitly, in every suit at law or equity: has this court jurisdiction to hear and adjudicate the matters at hand? At my request, the parties have examined this issue of equitable jurisdiction and have submitted memoranda which have been helpful to me in the decision which follows.[5]

---

**4.** IBM's claim that Comdisco's treatment of the microcode represented a tortious interference with contract has been voluntarily withdrawn by the plaintiffs.

**5.** In many jurisdictions adopting the traditional common law limitations on equity jurisdiction, absent an objection by either party, courts of equity may proceed to hear and decide matters a sufficient remedy for which exists at law (equity "jurisdiction" in those situations being something of a misnomer). There are historical grounds for this, which space does not allow me to examine here. *See generally* D. Dobbs, *Handbook on the Law of Remedies* §§ 2.5, 2.7 (1973). In Delaware, however, the common law distinction between the two civil systems is reinforced by statute. Much ink has spilled from the pens of the learned in the past century or so to the effect that the statutory restriction is descriptive rather than positive, and that it merely restates the limited jurisdiction exercised by the High Court of Chancery of Great Britain at the time the jurisprudence of this State was established. *See, e.g., Boxer v. Husky Oil Co.,* Del.Supr., 429

A.2d 995 (1981); *Harman v. Masoneilan Intern., Inc.,* Del.Supr., 442 A.2d 487 (1982); *Tull v. Turek,* Del.Supr., 147 A.2d 658 (1958); *duPont v. duPont,* Del.Supr., 85 A.2d 724 (1951); *Glanding v. Industrial Trust Co.,* Del.Supr., 45 A.2d 553 (1945). *But see Equitable Guarantee & Trust Co. v. Donahoe,* Del.Ch. 45 A. 583 (1900); *Glanding v. Industrial Trust Co.,* 45 A.2d at 560–67 (dissenting opinion by Judge Rodney). Be that as it may, it is clear that, unlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties. *duPont v. duPont, supra; Wife v. Husband,* Del.Ch., 285 A.2d 824 (1971); *Timmons v. Cropper,* Del.Ch., 172 A.2d 757 (1961). *But see McMahon v. New Castle Associates,* Del.Ch., 532 A.2d 601 (1987) (court to determine jurisdiction, upon proper motion made). By contrast, defendants in other jurisdictions may waive lack of equitable jurisdiction. *See, e.g., Kornstein v. Almac's, Inc.,* 98 R.I. 318, 201 A.2d 645 (1964); *Moore v. McAllister,* App., 216 Md. 497, 141 A.2d 176 (1958). In any event, the

In Delaware, common law and statute limit the jurisdiction of the Court of Chancery. 10 *Del.C.* § 342 provides that:

> The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.

Thus where a remedy provided by a law court of the state would be "sufficient," that is, "complete, practical and efficient," this Court is without jurisdiction.[6] *In re Wife, K.*, Del.Ch., 297 A.2d 424 (1972); *Hughes Tool Company v. Fawcett Publications, Inc.*, Del.Ch., 297 A.2d 428 (1972), *rev'd on other grounds*, Del.Supr., 315 A.2d 577 (1974). Equitable jurisdiction must be determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true. *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, Del.Supr., 267 A.2d 586 (1970). It has been frequently said that this Court, in determining jurisdiction, will go behind the "facade of prayers" to determine the "true reason" for which the plaintiff has brought suit. *Strickler v. Sussex Life Care Assoc.*, Del.Super., 541 A.2d 587 (1987); *Harman v. Masoneilan Intern., Inc.*, Del.Ch., 418 A.2d 1004 (1980), *rev'd on other grounds*, Del.Supr., 442 A.2d 487 (1982). By this it is meant that a judge in equity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic "open sesame" to the Court of Chancery. A practical analysis of the adequacy of any legal remedy, then, must be the point of departure for each matter which comes before this Court.

In analyzing the adequacy of the legal remedy available in this case, it is useful to examine the two main causes of action, so conceptually dissimilar, separately. I turn first to the alleged torts committed by Comdisco in connection with its leasing and re-leasing the 3090 line equipment.

Credit first claims that in selling 3090 system components and in re-leasing 3090 system equipment for periods longer than the original Credit-lessee lease, Comdisco has worked a conversion of Credit's property. There is a full legal remedy for conversion, of course: recovery of damages in trover. D. Dobbs, *Handbook on the Law of Remedies*, § 5.14 (1973). See *Western Air Lines, Inc. v. Allegheny Airlines, Inc.*, Del.Ch., 313 A.2d 145 (1973) (ordinarily, parties aggrieved by contract breach or tort have adequate remedy at law). Credit, in fact, seeks via this complaint money damages for the conversion of its property. Credit also seeks an accounting of Credit property converted. An accounting is within the jurisdiction of this Court. See 1 J. Pomeroy, *A Treatise on Equity Jurisprudence*, § 112 (5th ed. 1941). The accounting usually ordered by this Court, however, involves the wrongdoing of a fiduciary, no allegations of which are involved here. The "accounting" which Credit seeks here appears to be merely the type of discovery (in connection with pursuing the claim for conversion and trover) which in historic times comprised the auxiliary jurisdiction of the courts of equity but which is now readily available through the discovery rules of the law courts of this state. *McMahon v. New Castle Associates*, Del.Ch., 532 A.2d 601 (1987). The plaintiffs, in their memorandum on equitable jurisdiction, claim that an accounting is necessary in this case because arriv-

---

defendant here now argues that this suit should be dismissed for lack of equitable jurisdiction.

6. For purposes of clarity it should be noted that the subject matter of *none* of the plaintiff's various claims implicates what has been called equity's "inherent or exclusive" jurisdiction, matters over which this court has jurisdiction pursuant to the common law as codified in 10 *Del.C.* § 341. *Harman v. Masoneilan Intern., Inc.*, Del. Supr., 442 A.2d 487 (1982). If jurisdiction exists

in this case, it exists due to the lack of an adequate remedy at law, pursuant to 10 *Del.C.* § 342. This branch of equity jurisdiction is often referred to as concurrent, although the labels "exclusive" and "concurrent" are employed in different ways by different commentators, to the extent that their use can tend to obscure rather than enlighten. This regrettable confusion is discussed in *Harman v. Masoneilan, supra.*

ing at the proper amount of damages at law would be too complex for the finder of fact in a law court. Such an accounting among non-fiduciaries is an action recognized but rarely realized in equity. It is not warranted here. Assuming that Credit can prove that items of its property have been converted by Comdisco, it need only prove, in addition, the value of each item. Since Credit is in the business of selling the type of property which it claims has been converted, this would not seem to be an insurmountable obstacle. At that point all that is left for the trier of fact is simple addition, a task that would not appear to be more difficult for a lay juryman than for a vice chancellor. *McMahon v. New Castle Associates, supra.* Therefore, with respect to Credit's claims of conversion of its property, a complete remedy exists at law.

■ Credit next claims that Comdisco has induced the breach of at least ten contracts, apparently all versions of the TLMA, between Credit and its lessees. Once again, however, the tort of interference with contract is recognized in this state and an adequate remedy is available at law. *See Irwin & Leighton Inc. v. W.M. Anderson Co.*, Del.Ch., 532 A.2d 983 (1987).

■ Next, Credit claims that Comdisco's behavior amounts to tortious interference with business relations. Credit made it clear at oral argument that in this count it refers to the fact that Comdisco leased or sold 3090 line equipment which it did not have the right to lease or sell, and that, absent these leases or sales, Credit would have had the opportunity to attempt to lease or sell equipment to that customer. I find it hard to conceptualize this claim in a manner that does not, given the conversion and breach of contract claims, represent a "double dip" of damages for Credit.[7] Be that as it may, however, assuming that the elements of the tort of interference with business relations are shown, a remedy for this tort exists at law. *Bowl–Mor Co., Inc.*

*v. Brunswick Corp.*, Del.Ch., 297 A.2d 61 (1972), *appeal dismissed*, Del.Supr., 297 A.2d 67 (1972).

■ Credit's next count involves Comdisco's alleged breach of its contracts with Credit's lessees. That is, Credit claims that Comdisco has asserted more rights in the computer equipment at issue than were transferred to it by the third-party lessees, and has otherwise breached its contracts with the lessees. Credit claims that it is a third-party beneficiary of these contracts. If so, however, contract damages are available at law.

Finally, Credit alleges unfair competition on the part of Comdisco in connection with the allegedly wrongful acts already discussed. Damages for unfair competition on these grounds, however, would appear to be co-extensive with damages for the claims already discussed.

Credit has indicated in its memorandum on equitable jurisdiction that damages might be difficult to quantify and thus, theoretically, the legal remedy incomplete. I have already discussed this issue to some extent with reference to Credit's request for an accounting. I note that nowhere in the complaint is it alleged that the trier of fact in a court of law would be unable to quantify damages. Assuming this basis for equitable jurisdiction is before me, however, it is misplaced in the discussion of damages for those actions of Comdisco *which have already taken place.* That is because Credit has made it clear that it does not seek relief, equitable or legal, which would lead to the return of the property which it alleges Comdisco has converted. With respect to that property, Credit seeks damages, the computation of which will be the same in law or equity. To the extent that the difficulty of quantifying damages has application to the equitable jurisdiction issue, then, it is in connection with Credit's attempt to enjoin *future* tortious conduct of Comdisco, and I discuss it

---

7. In other words, if Credit is entitled to damages in tort representing the value of the equipment

re-sold or re-leased by Comdisco, it has re-

later.[8] Therefore, with respect to all claims for torts and breaches of contract *already committed* by Comdisco, full, fair and complete remedies at law exist.

█ The analysis under 10 *Del.C.* § 342 cannot end here, however. Credit seeks to enjoin any *future* breaches of contract and tortious behavior similar to those enumerated above. Injunction, of course, is a remedy within Chancery's jurisdiction. 1 J. Pomeroy, *supra*, § 138.[9] If this Court has jurisdiction to hear a portion of a cause of action, other portions of that cause of action, although purely legal in form and remedy, may be entertained as part of the concurrent or ancillary jurisdiction. *Wilmont Homes, Inc. v. Weiler,* Del.Supr., 202 A.2d 576 (1964). A litigant's mere statement that he would like an injunction in addition to damages is not enough to confer jurisdiction in this Court for *either* portion of a claim, however, or 10 *Del.C.* § 342 would be a nullity. *McMahon v. New Castle Associates, supra.* I must first find that jurisdiction over that portion of the claim involving a prayer for injunction is within my jurisdiction, that is, that the complaint states a claim for injunction and that there is not otherwise a sufficient remedy in the law courts of this state. 10 *Del.C.* § 342.

Plaintiff alleges that harm absent the injunctions sought is irreparable and thus the legal remedy incomplete in that "(1) ... Credit cannot gain possession of its computers or parts thereof, as it is entitled to do under the TMLA; (2) ... Credit has been deprived of its security for its leases because of the difficulties involved in locating and repossessing the computers and parts thereof removed by Comdisco from the possession of ... Credit's lessees; and

(3) IBM and ... Credit are unfairly forced to compete against their own, converted property."

With respect to the first two of these three allegations, they state neither irreparable harm nor inadequacy of legal remedy in that any damage which Credit has suffered as a result of loss of possession of its equipment, or loss of security for leases covering the same equipment, would be completely remedied by recovery in trover for conversion, that is, the market value of the equipment at issue, or by the other measures of damage appropriate to the legal causes of action stated in the complaint. In its memorandum on equity jurisdiction, Credit has attempted to reinforce these statements of irreparable harm by alleging facts not in the complaint: that Credit's mode of business, ability to borrow money and ability to calculate tax liability, will all be irreparably harmed by the conversion of its equipment.[10] Assuming that the facts implicit in this argument are properly before me, they still do not lead to the conclusion that the legal relief available is inadequate. Credit is in the business of leasing and selling computer equipment. Through the legal portion of this suit for damages for conversion, it has in effect attempted to enforce the legal equivalent of a sale or lease of equipment to Comdisco. There is nothing to indicate that the effects of this on Credit's business would be disruptive. This is reinforced by the fact that Credit does not seek an injunction to return the property it claims that Comdisco has converted; it only seeks to enjoin further conversions.[11] Credit's third statement in the complaint of "irreparable harm," that Credit has suffered or will suffer irreparable harm because Comdisco has converted its equipment and is compet-

---

couped the equivalent of the sale theoretically lost.

**8.** That is, Credit claims only an injunctive remedy will give it complete relief because damage will be incalculable with respect to future torts which may be committed by Comdisco.

**9.** *See* the discussion of the jurisdictional basis of injunction in *Harman v. Masoneilan Inter., Inc.,* Del.Supr., 442 A.2d 487 (1982); *duPont v. duPont,* Del.Supr., 85 A.2d 724 (1951); *Glanding v.*

*Industrial Trust Co.,* Del.Supr., 45 A.2d 553 (1945).

**10.** The complaint does allege that the 3090 line equipment at issue represents "the security for ... Credit's leases and the underpinning of its financing...."

**11.** In fact, in its original pleadings Credit sought preliminary injunctive relief to prevent Comdisco's ongoing tortious behavior, a request it later voluntarily withdrew.

ing against it in the market place with that equipment, is so conceptually vague that it is more difficult to analyze. However, should Comdisco convert any of Credit's property, and should Credit receive a full measure of damages with respect to that conversion, it is difficult to understand how Credit can be said to have suffered on Comdisco's resale of the property.

Credit also argues that it is entitled to injunctive relief because damages for any future conversions or related activities by Comdisco would be difficult or impossible to calculate. To the extent that this argument, which finds no support in the complaint, is before me, I note that Credit is in the business of re-lease and sale of computer equipment. It is inconceivable that damages for conversion of this equipment are incalculable. Indeed, the TLMAs themselves provide that in certain situations Credit will supply a fair market valuation of the equipment leased.

In other words, complete legal relief is available for the conversions and related activity alleged by Credit in the complaint. Should such activity take place in the future, complete relief would also be available. Nothing in the complaint indicates any special circumstances surrounding Comdisco's behavior or the nature of Credit's business which would tend to make damages incalculable or which otherwise require the issuance of an injunction to provide complete relief to Credit. The cases cited by Credit do not indicate otherwise. *Compare Cheese Shop International, Inc. v. Steele*, Del.Supr., 311 A.2d 870

(1973) (damages for the loss of good will incalculable); *Sealy Mattress Company of New Jersey, Inc. v. Sealy, Inc.*, Del.Ch., 532 A.2d 1324 (1987) (injunction of corporate merger appropriate since damages difficult to assess); *Elster v. American Airlines*, Del.Ch., 100 A.2d 219 (1953) (damages incalculable on exercise of stock option making injunction appropriate); *Finnegan v. Foraker*, Del.Ch., C.A. No. 5217, 1977 WL 5178, Brown, V.C. (June 29, 1977) (potential value of race horse incalculable).[12]

Credit, in its memorandum on equitable jurisdiction, raises an argument, more serious than those already noted, that equitable jurisdiction should exist here. This argument concerns a matter only peripherally noted in the complaint.[13] Credit argues that, absent an injunction, it would be irreparably harmed because, even if legal damages for each tort by Comdisco are adequate with respect to that discrete tort, Credit will be forced to bring a multiplicity of lawsuits to enforce its legal rights in the same manner which could be accomplished in this Court by injunction. If a real threat of the necessity of multiple suits at law exists, which can be prevented by an injunction, this Court will entertain jurisdiction. *McMahon v. New Castle Associates, supra; Delaware Bankers Ass'n v. Division of Revenue*, Del.Ch., 298 A.2d 352 (1972); *Equitable Guarantee & Trust Co. v. Donahoe*, Del.Ch., 45 A. 583 (1900).[14] As Credit points out in its memorandum on equitable jurisdiction "the common thread running through the 'multiplicity' cases is that, where the threat of injury is a *con-*

12. It is instructive to note the difference between this case and *Finnegan v. Foraker*. In *Finnegan*, the plaintiff's argument, accepted by the court, was that a contract entitling him to the winnings of a race horse had been breached, that damages were incalculable, rendering the legal remedy insufficient, and that he was thus entitled to an injunction ordering return of the horse, and specific performance. Here, Credit argues that its property has been converted, that monetary damages will compensate it for this conversion, but that damages are incalculable for *future* conversions which should thus be enjoined.

13. While the complaint notes that it expects the conversions and related acts of Comdisco to

continue, it does not indicate (except in conclusory fashion) that irreparable harm will arise due to a repetition of these acts.

14. Four situations otherwise requiring a multiplicity of lawsuits are generally recognized as bases for equitable jurisdiction. The first is the situation which Credit alleges is present here, involving the necessity of a number of suits by a single plaintiff against a single defendant. The second situation involves a plaintiff bringing suit in Chancery to preempt numerous suits by a defendant. The third and fourth situations involve large numbers of plaintiffs or defendants. *Field v. Layton & Layton*, Del.Ch., 141 A. 818 (1928).

*tinuing one* ... there is no adequate remedy at law because there is no way to recover for past and prospective injury in a single suit at law." The quintessential "multiplicity of suit" equity jurisdiction case involves a continuing trespass or nuisance which, absent some type of mandatory injunction, will continue to cause the plaintiff damage in the future. *See Field v. Layton & Layton*, Del.Ch., 141 A. 818 (1928).[15] Credit's claim here is different, however. Credit alleges that it will face a series of lawsuits as Comdisco, in the future, converts Credit's property and induces breaches of Credit-lessee contracts. Thus, Credit's claim is that it will face a series of discrete torts unrelated except in that they are the type of behavior involved in the portions of this lawsuit presently redressable at law.

It is a real threat of a multiplicity of lawsuits, and not the mere possibility of such suits, that confers equitable jurisdiction. *Chateau Apartments Co. v. City of Wilmington*, Del.Supr., 391 A.2d 205 (1978); *McMahon v. New Castle Associates, supra; Delaware Bankers Assoc. v. Division of Revenue, supra; Equitable Guarantee & Trust Co. v. Donahoe, supra.* Unlike the case of the continuing trespass, the "real threat" of the need for an unending number of lawsuits on Credit's part is not clear from the pleadings. Credit argues that, because Comdisco claims a right to engage in the behavior of which Credit complains, a suit at law for damages will have no bearing on Comdisco's future behavior. It appears to me, however, that Comdisco's claim of right cuts precisely the other way.[16] If Comdisco did not claim a right to possession of the equipment which Credit claims has been converted, but was taking the equipment out of spite or for some other non-business

purpose, the threat of the need for continued lawsuits would appear much more real. Here, however, Comdisco has re-leased the equipment at issue from Credit's lessees as a part of Comdisco's business. Its only motive appears to be profit. A suit at law on the grounds advanced by Credit in its complaint, if successful, would deprive Comdisco of any profit-based motive to continue in the behavior of which Credit complains. The availability of punitive damages for intentional torts makes it even less likely that Comdisco would continue a course of behavior found to be unlawful. Finally, Comdisco has represented to me that, should a court of law determine that its past behavior has been tortious or otherwise unlawful, it will desist from such behavior in the future. Given this situation, I find, as have courts in this jurisdiction in similar situations, that while a possibility of future lawsuits of course exists, there is not a substantial threat that such lawsuits will be necessary. *See Chateau Apartments Co. v. City of Wilmington, supra* (no real threat that defendant will continue to breach once rights adjudicated at law); *McMahon v. New Castle Associates, supra* (no basis for jurisdiction where no facts pled indicating that defendant will continue to breach the contract and defendant has agreed to abide by decision of a court of law); *Delaware Bankers Association v. Division of Revenue, supra* (no real threat of multiplicity of suits where limited number of suits at law will determine the validity of the positions taken by the parties). The cases cited by Credit are not to the contrary. *Cheese Shop International, Inc. v. Steele, supra* (equity jurisdiction exists where defendant fails to live up to continuing, affirmative obligation of contract unique in nature); [17] *Eastern Shore*

---

**15.** *See also Wilmont Homes, Inc. v. Weiler, supra* (equity will abate nuisance regardless of availability of money damages if nuisance real *and continuing*).

**16.** *Compare Deriemer v. Bennett*, Del.Ch., C.A. No. 1063, Berger, V.C. (April 11, 1985).

**17.** *Cheese Shop International, Inc. v. Steele* merits additional discussion. That case involved a contract between the plaintiff, a franchisor of

stores selling food products made to its specifications, and the defendant franchisee. The plaintiff had agreed to provide an exclusive franchise, use of its trademark and exclusive information about the manufacture of its food products. In return, the defendant agreed to pay the plaintiff a percentage of gross sales and to affix plaintiff's trademark to each product sold. The complaint alleged that, after a certain date, the defendant stopped performing both these obligations.

*Natural Gas Co. v. Stauffer Chemical Co.*, Del.Supr., 298 A.2d 322 (1972) (equitable jurisdiction exists where a multiplicity of suits is threatened because damages incapable of computation); *Deriemer v. Bennett*, Del.Ch., C.A. No. 1063, Berger, V.C. (Apr. 11, 1985) (ongoing breach of partnership obligations "without justification or excuse" warrants equitable jurisdiction); *Mayor & Council of New Castle v. Witco Chemical Corp.*, Del.Ch., C.A. No. 6188, 1982 WL 17862, Marvel, C. (Apr. 8, 1982) (ongoing nature of tortious contamination of ground water makes any computation of damages speculative).

In any case involving the allegation of intentional tort, the plaintiff could argue, as the plaintiff has here, that a possibility exists that the defendant will commit a similar tort in the future. If such an allegation were sufficient to provide concurrent jurisdiction over the portions of plaintiff's claim for which an adequate legal remedy is available, the limitations on the jurisdiction of this Court found in the common law and 10 *Del.C.* § 342 would, with respect to intentional tort cases at least, become meaningless indeed. Credit in this action has alleged that it has been damaged by Comdisco's breaches of contract and tortious conduct. For these claims an adequate remedy at law exists. Nothing indicates that a real threat of continuing wrongful behavior on Comdisco's part, requiring multiple additional lawsuits, exists. As our Supreme Court has said: "Should the [defendant continue to breach duties owed to the plaintiff], however, proving the danger of multiplicity of suits to be real, the plaintiff will, we are certain, be able to locate the Court of Chancery again." *Chateau Apartments Co. v. City of Wilmington, supra* at 208.[18]

While it is unnecessary to say more, I note that if I were to entertain a prayer for injunction in this case (that is, if inadequacy of the legal remedies available for any future wrongdoings by Comdisco permitted me jurisdiction to hear such a lawsuit), any injunction entered in this matter would be of highly problematical effectiveness. To enjoin tortious conduct with respect to as yet non-existent contracts with as yet unidentified parties, where the entity subject to the injunction would not be in control of the terms of the contract, would at best suffer from some likelihood of futility, and at worse constitute an impermissible advisory opinion.[19] *See Stroud v. Milliken Enterprises, Inc.*, Del.Supr., 552 A.2d 476 (1989).[20]

The court found equity jurisdiction on two grounds. First, that there was a single, ongoing obligation on defendant's part which required the defendant to perform affirmative acts (that is, make payments and affix plaintiff's trademark to products sold). "[I]n light of the ongoing nature of the contract and defendant's continuing unwillingness to comply with the terms of the contract, there is equity jurisdiction to prevent the imminent threat of a multiplicity of actions." 311 A.2d at 871. This contrasts with the instant action in which the "threat" is that lawsuits will be needed to address discrete torts or breaches of separate contracts. The court also based jurisdiction on the fact that, in breaching his obligation to affix plaintiff's trademark to products he sold, the defendant had damaged the plaintiff in an amount not possible to quantify.

18. Because of my decision, *infra,* that equitable jurisdiction does not exist with respect to IBM's claims against Comdisco, I need not decide whether jurisdiction over those claims would confer ancillary jurisdiction over the conceptually unrelated claims of Credit against Comdisco.

19. To the extent it is not explicit in the foregoing discussion, the same reasoning which I have applied to Credit's prayer for injunction of Comdisco's tortious conduct applies to any injunction which Credit seeks for any breach of Comdisco's contracts with the third-party lessees, to which contracts Credit claims to be a third-party beneficiary.

20. Interestingly, Credit has not sought recovery from those directly liable in contract, the third-party lessees. It would appear that with respect to the majority of the damages alleged by Credit, full recovery could be had at law from these entities. Because I have decided that an adequate remedy exists at law against Comdisco, I need not examine the following interesting question: The plaintiff claims to be entitled to recovery from two entities based on the same transaction. Complete remedy at law could be had against entity A. Complete recovery is not available against entity B at law, however. The plaintiff chooses not to pursue entity A and instead sues entity B in Chancery, basing jurisdiction on the fact that a complete remedy against entity B is not available at law. Does equitable jurisdiction exist?

■ I turn now, briefly, to the second main cause of action in this lawsuit: IBM's claim that Comdisco has copied and sold its microcode. IBM claims that these acts on the part of Comdisco amount to deceptive trade practices and breach of contract. These actions, of course, are ones for which complete and full damages are available at law. IBM also seeks to enjoin Comdisco from copying and·selling IBM microcode in the future. The reasoning above adequately addresses this claim, however: IBM seeks to enjoin the commission by Comdisco of discrete torts or breaches of contract in the future for which a complete remedy is available and which are unlikely to continue due to the availability of complete compensatory *and* punitive damages.[21]

IBM, however, points out a distinction between the claims that it raises based on the microcode and the claims of Credit which I have already discussed. In copying the microcode and labeling it as an IBM product, IBM points out, Comdisco has engaged in a type of behavior which typically may involve the loss of good will. That is, if the copies which Comdisco is labeling as IBM microcode and distributing were inferior or otherwise less useful to users than the copies which IBM itself makes available, a loss of good will could result for which no meaningful assessment of damages could ever be made. In that case, an injunction would be an appropriate vehicle to enforce IBM's otherwise purely legal rights. *See Cheese Shop International, Inc. v. Steele, supra* (equity will protect good will). The flaw in IBM's argument, however, is that nowhere in the complaint is there a mention that, absent an injunction, loss of good will result; nor is there a statement that the Comdisco microcode is inferior or even different from similar copies of microcode made available by IBM.[22]

IBM has not sought to enjoin Comdisco from copying and distributing the microcode during the pendency of this lawsuit, which also tends to indicate that it does not fear a loss of good will or other damages not recoverable at law. Finally, IBM's memorandum on equity jurisdiction notes that the "exercise of equity jurisdiction in such circumstances is based upon the need to intervene in order to protect a supplier's good will and reputation," but does not allege that IBM's good will *is* in danger here due to Comdisco's behavior. In other words, IBM's position appears to be that allegations of copying *alone* are enough to indicate that equitable jurisdiction is necessary; that is, that a court, upon allegations of copying, will *presume* that good will is endangered, and thus that a claim for injunction is stated without the necessity of a statement of irreparable harm or otherwise incomplete recovery at law. IBM, however, has cited no case in support of this proposition; nor has my research indicated that any exists in this jurisdiction. It is true that in copying IBM's microcode, placing an IBM label on it, and distributing it in breach of its contractual obligations with IBM and in alleged violation of the Deceptive Trade Practices Act in Delaware and in Illinois, Comdisco has committed the *type* of act which may be enjoined by this Court. This is true, however, only because this type of act frequently involves threats to good will not compensable at law. No such allegation of a threat to IBM's good will has been made here. Therefore, any future copying of IBM's microcode by Comdisco involving breaches of contract or other wrongs appear to be fully compensable at law.

■ A point of departure for any opinion by the Court of Chancery must be to consider whether equitable jurisdiction ex-

---

**21.** In its motion to dismiss, Comdisco claims that if the allegations of the complaint are true, IBM has at most stated a claim in connection with the copying of the microcode in violation of the Federal Copyright Act. If this is true, of course, actions based on state law are preempted, and there is not a sufficient remedy "before any other Court or jurisdiction of this State." Unfortunately for the plaintiff, however, if the other state courts are preempted from hearing this case on that basis, this Court is similarly preempted.

**22.** The complaint alleges that Comdisco has "modified" the code, but not that the code as modified is different from the code as modified by IBM itself for particular reconfigurations of 3090 computer equipment.

ists in the matter which the parties seek to put before it. This is true whether the defendant objects on grounds of lack of equitable jurisdiction or whether the Court acts on its own initiative. If there is a full, complete, practical and efficient remedy at law, this Court is without jurisdiction to hear the matter. *Chateau Apartments Co. v. City of Wilmington, supra; McMahon v. New Castle Associates, supra.* To determine whether a sufficient remedy exists at law, I must penetrate the facade of prayers and determine what the plaintiff truly seeks from the lawsuit. *Harman v. Masoneilan,* Del.Ch., *supra.* Here, the plaintiffs want two things. They want money damages for past wrongs committed by Comdisco. They also want to prevent such wrongs in the future. This latter desire does not confer equitable jurisdiction, however. Absent allegations that a real threat exists that a multiplicity of lawsuits will be required to prevent such wrongs, or that such acts in the future will work irreparable harm, the plaintiffs have a sufficient remedy at law.

In sum, I conclude that an adequate remedy at law does exist in this matter. Damage remedies exist to compensate for loss engendered by torts or contract breaches which have already occurred. While injunction is not available at law, should torts or contract breaches occur in the future, a complete remedy will then be available, and I find a multiplicity of suits to be unlikely given the availability of full recovery together with punitive damages.

This Court is without jurisdiction to hear the plaintiffs' claims in this matter. 10 *Del.C.* § 342. Accordingly, I do not reach the defendant's pending motion to dismiss for failure to state a claim. The plaintiffs' complaint shall be dismissed, unless within 20 days the matter is transferred to the Superior Court. 10 *Del.C.* § 1902.

IT IS SO ORDERED.