COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

May 28, 2015

Peter J. Walsh, Jr., Esquire
Jacob R. Kirkham, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

John P. DiTomo, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Re:     *East Balt LLC v. East Balt US, LLC*
        C.A. No. 10462-VCN
        Date Submitted: February 27, 2015

Dear Counsel:

Plaintiffs seek the release, over Defendants' objections, of funds held in escrow, where the money was placed to indemnify Defendants against certain risks. Defendants challenge the subject matter jurisdiction of this Court to hear Plaintiffs' claims. Although Plaintiffs seek money, they submit that a court of law cannot afford them the certain, efficient, and complete relief available from this Court through an order compelling specific performance and the payment of funds out of escrow.

## I. BACKGROUND

In November 2012, East Balt US, LLC (f/k/a OEP East Balt Holdings LLC) and OEP East Balt B.V. (together, the "Defendants") purchased certain assets and assumed certain liabilities of East Balt, Inc. (the "Seller").[1] The Seller owned and operated, directly and through subsidiaries, businesses that mixed, baked, marketed, and distributed bakery products. Pursuant to the Asset Purchase Agreement (the "APA"), Defendants paid over $250 million, consisting of assumed debt and approximately $70 million in cash. Seller later converted into East Balt LLC ("East Balt"), the limited liability company plaintiff in this action.

Under the APA, a portion of the purchase price (the "Escrow Amount") was placed in escrow, pursuant to an escrow agreement (the "Escrow Agreement") with JPMorgan Chase Bank, National Association (the "Escrow Agent"), to indemnify Defendants against potential losses from post-closing claims subject to the APA's indemnity provision. Seller and K.F. Trust No. 1 (the "Trust," and with East Balt,

---

[1] Defendants were formed, specifically for the acquisition, by the private investment arm of JP Morgan Chase & Co. Verified Compl. (the "Complaint" or "Compl.") ¶ 2. The facts set forth herein are drawn from the Complaint and the exhibits attached thereto, and are assumed true for purposes of this motion.

"Plaintiffs") agreed jointly and severally to indemnify Defendants for, *inter alia*, breaches of representations or warranties, noncompliance with covenants, misstatements regarding the Seller's indebtedness, and particular third party claims.[2]

The Escrow Amount was to be released eighteen months after closing (the "Release Date"), unless Defendants had asserted indemnifiable claims. On the Release Date, the parties to the APA were to "execute joint written instructions to the Escrow Agent to release the then existing Escrow Amount to Seller . . . *less* the amount of unresolved claims for indemnification asserted by the Purchaser Indemnitees, which have not been paid. Such unreleased amount shall be retained by the Escrow Agent."[3]

Up until the Release Date, Defendants could make a claim for indemnification by providing written notice (a "Claim Notice") "promptly after . . . receiv[ing] any written notice of any Proceeding against or involving [them] . . . or otherwise discover[ing] the liability, obligation or facts giving rise to such claim

---

[2] The Trust was Seller's sole stockholder and is now the sole member of East Balt.
[3] Compl. Ex. A (APA) § 9.5.2. The Escrow Agreement echoes this procedure. Compl. Ex. B (Escrow Agmt.) § 2.01(b).

for indemnification . . . ."[4]  Any such Claim Notice was required to describe the nature and estimated amount of Defendants' loss.

On June 27, 2014, the last business day before the Release Date, Defendants sent a Claim Notice to Plaintiffs and the Escrow Agent, asserting seven purported claims for indemnity from the Escrow Amount, totaling more than $7.9 million. Accordingly, the Escrow Agent made no disbursement on the Release Date.  On July 8, 2014, Plaintiffs responded to the Claim Notice through an objection letter, which contested Defendants' entitlement.  Under these circumstances, the Escrow Agent is required to hold the disputed funds until (i) the parties reach a written agreement or (ii) a court of competent jurisdiction enters a final and non-appealable order or judgment resolving the dispute, which is certified in writing by Defendants' counsel.[5]

## II.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their Complaint on December 16, 2014, asserting breach of the APA and the Escrow Agreement.  They alleged that Defendants have

---

[4] APA § 9.6.1.
[5] Escrow Agmt. § 2.01(a).

(i) asserted claims and losses for which they are not entitled to indemnification, (ii) failed to provide the requisite support for their stated claims, and (iii) wrongfully refused to provide the Escrow Agent with joint written instructions directing the release of the Escrow Amount. Plaintiffs also charge Defendants with breach of the implied covenant of good faith and fair dealing.

Relevant to the current motion is Plaintiffs' requested relief—specific performance of the APA and the Escrow Agreement. Plaintiffs seek an order requiring Defendants to provide joint written instructions directing the Escrow Agent to release the remaining Escrow Amount, as well as an order compelling Defendants to supply complete and accurate information on the claims and losses for which they seek indemnification. Alternatively, this Court could declare that Defendants' indemnity claims are invalid and direct the Escrow Agent to disburse the funds to Plaintiffs.

Defendants have moved to dismiss pursuant to Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction. They note that this is a contractual indemnification case, ultimately revolving around $7.9 million held in escrow, for which the legal remedy of money damages appears adequate.

Plaintiffs counter that they do not seek damages from Defendants, but the release of the Escrow Amount held by the Escrow Agent. Plaintiffs assert that the Superior Court's powers are inadequate because it cannot compel the Escrow Agent (a nonparty) to deliver the Escrow Amount to them, nor can it compel Defendants to perform affirmative actions, *i.e.*, provide written instructions to the Escrow Agent directing release of funds or provide information in accordance with the APA.

### III. ANALYSIS

Unless provided with a statutory grant of jurisdiction, this Court may only hear cases that involve the assertion of an equitable right or the invocation of an equitable remedy.[6] Claims involving legal rights and remedies may be heard under the "clean-up" doctrine once a basis for equitable jurisdiction has been established.[7] Because Plaintiffs have neither brought equitable causes of action nor claims for which the legislature has bestowed jurisdiction on this Court, the Court may only hear this action if Plaintiffs' request for equitable relief is proper.

---

[6] *See, e.g.*, *Willis v. PCA Pain Ctr. of Va., Inc.*, 2014 WL 5396164, at *2 (Del. Ch. Oct. 20, 2014).
[7] *Id.*

Specific performance, which Plaintiffs seek, is an equitable remedy "by which a court of equity may compel the actual accomplishment of a contract by the party bound to fulfill it."[8] Such relief "is designed to take care of situations where the assessment of money damages is impracticable or somehow fails to do justice."[9] A party is not entitled to specific performance if an award of damages would be "as complete, practical, and efficient to the ends of justice and its prompt administration as the equitable remedy . . . [and would be] available to the plaintiff as a matter of right."[10]

Equitable jurisdiction is "determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true."[11] The Court takes a realistic view of the complaint and will not hear a case where a complete legal remedy exists despite a plaintiff's prayers for traditional equitable relief.[12]

---

[8] Donald J. Wolfe, Jr. & Michael A. Pittenger ("Wolfe & Pittenger"), *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 12.03[a], at 12-39 (2014).

[9] *Equitable Trust Co. v. Gallagher*, 102 A.2d 538, 546 (Del. 1954).

[10] Wolfe & Pittenger, § 12.03[b][2], at 12-42.

[11] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

[12] *Id.*

"A practical analysis of the adequacy of any legal remedy, then, must be the point of departure for each matter which comes before this Court."[13]

\* \* \*

Defendants argue that, here, an assessment of money damages would be neither impracticable nor would it fail to do justice.[14] Supposedly, a monetary judgment would make Plaintiffs whole. At first blush, a "focus upon the allegations of the complaint in light of what the [P]laintiff[s] really seek[] to gain" favors Defendants' argument for dismissal.[15] Plaintiffs seek possession of money currently held by the Escrow Agent. Damages of $7.9 million could compensate Plaintiffs should they prevail on the merits. Defendants question why specific performance or mandatory injunctive relief, as opposed to the payment of the entire amount at issue, would be necessary to satisfy Plaintiffs.[16]

---

[13] *Id.*

[14] *See W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2007 WL 3317551, at *12 (Del. Ch. Nov. 2, 2007).

[15] *See Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sept. 10, 2008).

[16] Specific performance and mandatory injunctive relief are closely related. Simplistically stated, both compel action, but specific performance requires a contract to be enforced.

Defendants also note that the Superior Court can grant declaratory relief regarding rights under a contract, and could thus establish entitlements to the Escrow Amount.[17] Plaintiffs respond that a declaration entitling them to the Escrow Amount would be an insufficient remedy because those funds would not necessarily be released unless a court were to order affirmative action, either requiring Defendants to authorize the release, compelling their counsel to certify the court's order, or ordering the Escrow Agent to release the money. While the Superior Court could declare rights, it would be unable to compel the Escrow Agent to deliver the Escrow Amount or order Defendants to act.

Defendants reply that declaratory relief would be adequate here because the Escrow Agent is required to release the Escrow Amount if a court of competent jurisdiction enters a final and non-appealable judgment that is certified as such by Defendants' counsel.[18] They argue that the Superior Court, pursuant to its contempt powers, has the power to direct counsel. Thus, according to Defendants,

---

[17] 10 *Del. C.* § 6501 ("[C]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.").

[18] Escrow Agmt. § 2.01(a).

a court of law can provide an adequate remedy, and this Court lacks subject matter jurisdiction.

* * *

Although Defendants' arguments for dismissal are not without merit, this Court has held, in materially similar circumstances, that it is capable of providing a more "certain, prompt, complete, [and] efficient" remedy than is available at law.[19] In *SecNet Holding, LLC v. Potash*, the plaintiff sought an order compelling an escrow agent, which was not a party to the action, to release $750,000. The Court concluded that even if plaintiff could obtain a judgment for damages in a law court, "defendants . . . failed to show how plaintiff could then enforce its judgment as to the sum held in escrow."[20] "Because recourse would fall to this Court to enforce the judgment and a legal remedy [was] not adequate or as certain, prompt, complete or efficient as the equitable remedy . . . plaintiff lack[ed] an adequate remedy at law . . . ."[21]

---

[19] *SecNet Hldg., LLC v. Potash*, C.A. No. 7781-VCP, at 34 (Del. Ch. Apr. 2, 2013) (TRANSCRIPT).
[20] *Id.*
[21] *Id.* at 33-34.

In *SecNet*, the escrow agent was required to release disputed funds upon receipt of "a certified copy of a final, non-appealable order or judgment of a court of competent jurisdiction as to the proper distribution of all or a portion of such Disputed Amount."[22] The Court relied on *Xlete, Inc. v. Willey*[23] to conclude that a remedy at law would be inadequate.[24] In *Xlete*, this Court explained that it "has the power to specifically enforce escrow agreements which are by their very nature fiduciary relationships."[25]

Funds are placed in escrow to provide a convenient source of money that may be owed. Because a damages award, or the potential enforcement of declaratory relief through a law court's contempt powers, would not be as "certain, prompt, complete, or efficient" as the equitable remedies that Plaintiffs seek, this Court has subject matter jurisdiction over the Complaint.[26]

---

[22] Verified Second Am. Compl. Ex. 2, § 4(a)(vii), *SecNet Hldg.*, C.A. No. 7781-VCP.

[23] 1977 WL 5188, at *1 (Del. Ch. June 6, 1977).

[24] *SecNet Hldg.*, C.A. No. 7781-VCP, at 33-35.

[25] *Xlete*, 1977 WL 5188, at *1.

[26] Given this conclusion, it is unnecessary to address the import of the forum selection clauses in the APA and Escrow Agreement.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K