**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**MAGISTRATE IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Final Report: January 29, 2024
Date Submitted: October 24, 2023

Jason C. Powell, Esquire
Thomas J. Reichert, Esquire
The Powell Firm, LLC
1813 North Franklin Street
Wilmington, DE 19802

Thomas A. Uebler, Esquire
Jeremy J. Riley, Esquire
Sarah P. Kaboly, Esquire
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

John A. Sergovic, Jr., Esquire
Sergovic Carmean Weidman
McCartney & Owens, P.A.
25 Chestnut Street, P.O. Box 751
Georgetown, DE 19947

Re:     *Gwen Thornton, as beneficiary and Trustee of the Irrevocable Trust of Lawrence E. Mergenthaler v. Louise Lamborn and Cheryl T. Bell*, C.A. No. 2022-0842-SEM

Dear Counsel:

The plaintiff initiated this action through a complaint pleading one count: breach of fiduciary duty. But that count is a legal claim dressed in equitable clothing. I find this Court lacks subject matter jurisdiction over the plaintiff's true claim, the defendants' pleading-stage motions should be granted, and this action should be dismissed.

## I.    BACKGROUND[1]

Through this action, Gwen Thornton (the "Plaintiff") challenges the conduct of Louise Lamborn and Cheryl Bell (now Cheryl Patterson, "Patterson," together with Lamborn, the "Defendants") in managing the assets of the late Lawrence Mergenthaler (the "Decedent") before his death. The Decedent "was a self-made man who during his life accumulated a significant amount of assets."[2]

During the final decade of his life, the Decedent relied on Lamborn, his friend and power of attorney.[3] Lamborn "worked in concert" with Patterson, the Decedent's stepdaughter.[4] Their conduct is now challenged by the Plaintiff, the Decedent's daughter, in her capacity as co-trustee of the Decedent's trust. I begin with the background of that trust before turning to the instant dispute.

---

[1] Unless otherwise noted, all factual averments are taken from the amended complaint (the "Complaint") and the exhibits attached thereto. Docket Item ("D.I.") 18. For purposes of the motion to dismiss, factual assertions in the complaint are accepted as true if well-pleaded. *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896 (Del. 2002). For the motion for judgment on the pleadings, I may also consider the responses in the moving party's answer. *See Warner Commc'ns, Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Ch. 1989), *aff'd*, 567 A.2d 419 (Del. 1989). Finding the Court lacks jurisdiction on the face of the Complaint, I need not reach the answer.

[2] D.I. 18 ¶ 1.

[3] *Id.* ¶¶ 3, 36.

[4] *Id.* ¶ 4.

### A.     The Trust

The Decedent established the Irrevocable Trust of Lawrence E. Mergenthaler (the "Trust") on January 10, 1990, naming his wife, Audrey Fleenor Mergenthaler, as his co-trustee.[5]  While the Decedent was alive, the trustees of the Trust were directed to pay the Trust's net income to Mrs. Mergenthaler.[6]  Once the Decedent and Mrs. Mergenthaler passed, the Trust was directed to the Decedent's children and stepchildren (including the Plaintiff and Patterson).[7]

The Decedent vested to the Trust "all right, title and interest in and to all policies of life insurance" deposited into the Trust or otherwise acquired by the Decedent.[8] The trustee of the Trust was, thus, empowered to "exercise and enjoy, as absolute owner of such policies of insurance, all of the options, benefits, rights and privileges under such policies[.]"[9]  The Decedent abdicated ownership of, or responsibility for such policies in the Trust which provided: "[t]he [Decedent] shall be under no duty to pay premiums, assessments or other charges necessary to keep policies of life insurance deposited into [the Trust] in force. [The Decedent] shall

---

[5] *Id.* ¶ 14; D.I. 18, Ex. A.

[6] D.I. 18 ¶ 15.

[7] *Id.* Ex. A.

[8] *Id.* Art. 6(a).

[9] *Id.*

incur no liability to the beneficiaries of the trust or to any other person if [the Decedent] permits any policy to lapse for nonpayment of premiums[.]"[10] Rather, the trustees must "pay premiums, assessments or charges necessary to keep each insurance policy included in the trust in force, . . . only to the extent that income or corpus of the [T]rust is available for the payment of such premiums."[11]

The Decedent had numerous life insurance policies. Those policies included two (2) with Commonwealth Insurance (the "Commonwealth Policies"), one (1) with Banner Life Insurance (the "Banner Life Policy"), one (1) with Lincoln National Insurance (the "Lincoln National Policy"), and one (1) with Protective Life Insurance—the primary policy at issue in this action (the "Protective Policy").[12]

Mrs. Mergenthaler predeceased the Decedent on August 1, 1998, at which time Patterson was appointed co-trustee of the Trust.[13]

### B. The Settlement

After Mrs. Merganthaler's passing, the Decedent became embroiled in a dispute regarding his late wife's estate. Mrs. Merganthaler's children sued the

---

[10] *Id.* Art. 6(b).

[11] *Id.* Art. 6(c).

[12] D.I. 18 ¶ 5.

[13] *Id.* ¶¶ 17–18.

Decedent in October 2003 alleging the Decedent was obligated to make certain payments to them after their mother's passing.[14] The Decedent settled with his stepchildren through an agreement executed January 27, 2004 (the "Settlement").[15] In pertinent part, the Decedent agreed, through the Settlement, to "keep in force the [listed] insurance policies"—including the Protective Policy—"and to pay or cause to be paid the premiums therefor to the extent necessary to prevent such policies from lapsing and to maintain them[.]"[16]

### C.     The Decedent's Decline

The Decedent survived his wife by over twenty (20) years. In the final decade of his life, his faculties began to fail him. The Decedent suffered a major stroke in 2012, from which he never fully recovered.[17] He suffered additional strokes in the following years and was ultimately diagnosed with dementia.[18] The Decedent's dementia rendered him "more forgetful [with] impaired thinking that impacted his daily functioning and decision making."[19]

---

[14] *Id.* ¶ 22.

[15] *Id.* ¶ 23; D.I. 18, Ex. B.

[16] D.I. 18 ¶ 24; *Id.*, Ex. B at p.3, 6.

[17] D.I. 18 ¶ 27.

[18] *Id.*

[19] *Id.*

In his time of need, the Decedent "became reliant on" the Defendants.[20] The Defendants (Patterson as co-trustee and Lamborn as the Decedent's agent under a power of attorney) allegedly unduly influenced the Decedent to transfer millions of dollars to the Defendants and their family members.[21] As discussed later, the Defendants also allegedly interfered with the Settlement.

### D. The Decedent's Death

The Decedent passed on July 31, 2020.[22] At that time, the Commonwealth Policies and the Banner Life Policy were liquidated and paid into the Trust.[23] The Lincoln National Policy was also maintained and liquidated at the Decedent's death.[24] But, unbeknownst to the Plaintiff, the Protective Policy was not.

After the Decedent's death, the Plaintiff became co-trustee of the Trust, serving alongside Patterson. It was only after her appointment and through separate litigation that the Plaintiff learned that the Protective Policy lapsed in 2018.[25] The Plaintiff uncovered that prior automatic payments toward the premiums for the

---

[20] *Id.* ¶ 30.

[21] *Id.* ¶ 31.

[22] *Id.* ¶ 2.

[23] *Id.* ¶ 7.

[24] *Id.* ¶ 8.

[25] *Id.* ¶ 19.

Protective Policy were stopped around 2016 and, despite notices and warnings, premiums went unpaid until the Protective Policy was cancelled in 2018.[26] Absent cancellation, the Protective Policy would have paid out $225,000.00 to the Trust.[27]

### E. Procedural Posture

The Plaintiff initiated this action on September 21, 2022.[28] After the Defendants moved to dismiss, the Plaintiff amended her complaint under Court of Chancery Rule 15(aaa) (the "Complaint").[29] Patterson moved to dismiss the Complaint (the "Motion to Dismiss"), while Lamborn answered the Complaint, then moved for judgment on the pleadings (the "Motion for Judgment," together with the Motion to Dismiss, the "Motions").[30] The parties fully briefed the Motions by May 19, 2023 and on October 24, 2023, I heard oral argument.[31] This is my final report.

## II. ANALYSIS

Through the Motions, the Defendants both seek a pleading-stage ruling in their favor. One common argument in the Motions is that this Court lacks subject

---

[26] *Id.* ¶¶ 9–10.

[27] *Id.* ¶ 12.

[28] D.I. 1.

[29] *See* D.I. 18.

[30] D.I. 24, 25, 28.

[31] D.I. 12, 14, 18, 30, 33, 35, 37.

matter jurisdiction. Although the Defendants chose different paths through which to challenge this Court's jurisdiction, the underlying question is the same—has the Plaintiff properly invoked this Court's limited jurisdiction? The answer is "no."

"The Court of Chancery is proudly a court of limited jurisdiction. Its judges will adjudicate claims only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute."[32] "[T]he court looks at the substance and not the mere form of the claims. This precludes the court from asserting jurisdiction based on the incantation of magic words."[33] Here, the Plaintiff's purported claim for "breach of fiduciary duty" fails to "prize the door of Chancery."[34]

Through this action, the Plaintiff challenges the lapse of the Protective Policy and seeks to hold the Defendants responsible for the resulting loss to the Trust. To do so and invoke this Court's equitable jurisdiction, the Plaintiff purports to plead a

---

[32] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 249 A.3d 375 (Del. 2021).

[33] *Kroll v. City of Wilm.*, 2023 WL 6012795, at *4 (Del. Ch. Sept. 15, 2023) (citing *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)).

[34] *Birney v. Del. Dep't of Safety & Homeland Sec.*, 2022 WL 16955159, at *2 (Del. Ch. Nov. 16, 2022).

claim for breach of fiduciary duty. But that claim is not viable, nor does it reflect the essence of the Plaintiff's otherwise legal claim for money damages.

Under 10 *Del. C.* § 3701, "[a]ll causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued." Thus, "[c]laims the principal may have for breach of fiduciary duty survive to the fiduciary of the principal's estate, not the beneficiaries of the principal's estate[,]" or, as attempted here, the co-trustee of the principal's trust.[35]

This statutory bar aside, the essence of the Plaintiff's claim is contractual. Through the Settlement, the Decedent was obligated to maintain the Protective Policy. He failed to do so, purportedly through the acts of the Defendants, his agents. Redress for such failing would be through a breach of contract claim against the Decedent (or, given his passing, his estate).[36] That claim, the Plaintiff's true claim, is outside this Court's limited jurisdiction.

---

[35] *Rende v. Rende*, 2023 WL 2180572, at *15 n.175 (Del. Ch. Feb. 23, 2023), *aff'd*, 2023 WL 6275068, at *4 (Del. Ch. Sept. 25, 2023).

[36] The parties challenge the Plaintiff's standing to bring such a legal claim, but I find it unnecessary to wade into that dispute. *See Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 85 (Del. Ch. 1991).

The Plaintiff argues treating her claim as purely contractual "ignore[es] the allegations that [the Decedent] was not managing his own affairs at the time the [Protective Policy] lapsed."[37]  She continues that, because the Decedent's finances were being managed by the Defendants, the Decedent did not breach the Settlement; the only breach was of the Defendants' fiduciary duties.[38]  I disagree.

The Plaintiff's argument ignores that acts of agents are, generally, imputed to and binding upon their principals.[39] A principal cannot disclaim responsibility to perform under a contractual agreement by authorizing an agent to act on his behalf; the contractual duty remains with the principal.[40]  Here, the Decedent was bound by the Settlement and, taking the allegations in the Complaint as true (or, for the Motion for Judgment, in a light most favorable to the Plaintiff) the Decedent breached his

---

[37] D.I. 33 at 19.

[38] *Id.* p.20.

[39] *See Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975) ("One who delegates power to act is responsible for what is done pursuant to that authority.").

[40] *See Off. Comm. Of Unsecured Creditors of Motors Liquid. Co. v. JPMorgan Chase Bank*, 103 A.3d 1010, 1015 (Del. 2014) ("As a matter of ordinary course, parties who sign contracts and other binding documents, or authorize someone else to execute those documents on their behalf, are bound by the obligations that those documents contain.").

obligations thereunder. The claim for such breach is, at its core, a legal claim for money damages.[41]

The Complaint should be dismissed. Under 10 *Del. C.* § 1902, "[n]o civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal." But, here, not only do I find jurisdiction lacking, but I do so because the claim, as pled, is not viable. Thus, dismissal is not "solely" for lack of jurisdiction and I recommend this action be dismissed without leave to transfer.

## III.  CONCLUSION

For the above reasons, I find that the Motions should be granted, and this action should be dismissed without leave to transfer. This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Magistrate in Chancery

---

[41] And, as already addressed, to the extent the principal would respond to such legal claim by challenging his agent's conduct, such is a claim that survives to the principal's estate, which is not a party to these proceedings, let alone the complaining party.