COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: July 31, 2023
Date Submitted: April 19, 2023

Geoffrey G. Grivner, Esquire
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Ste. 720
Wilmington, Delaware 19801

Anthony N. Delcollo, Esquire
Thomas Kramer, Esquire
Offit Kurman, PA
222 Delaware Ave., Suite 1105
Wilmington, Delaware 19801

Gerald E. Burns, Esquire
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th St., Suite 3200
Philadelphia, PA 19102

Todd M. Reinecker, Esquire
PilieroMazza, PLLC
1910 Towne Centre Blvd., Suite 250
Annapolis, Maryland 21401

Re: *Acme Markets, Inc. v. Oekos Kirkwood, LLC*,
C.A. No. 2022-0623-SEM

Dear Counsel:

Pending before me is a motion to dismiss claims for declaratory relief, breach of contract, and reformation related to cost-of-living rental increases. For the reasons below, I find the motion should be granted in part and denied in part. The plaintiff's claims arising from the 2015 calculation are time-barred. The plaintiff also failed to plead a reasonably conceivable claim for reformation. Conversely, the plaintiff's claims arising from the 2020 calculation are viable. But, without the reformation claim, those claims are outside the scope of this Court's limited

jurisdiction. Thus, if my recommendations are adopted, I find the remaining claims should be dismissed with leave to transfer to a court with jurisdiction.

## I.    BACKGROUND[1]

This case involves a commercial lease (the "Lease") for real property, located at 4365 Kirkwood Highway in Wilmington, Delaware (the "Property").[2] The Lease is between Acme Markets, Inc. (the "Plaintiff"), the tenant who operates a supermarket on the Property, and Oekos Kirkwood, LLC (the "Defendant," with the Plaintiff, the "Parties"), the owner of the Property and the Plaintiff's landlord.[3]

The Parties were not, however, the original parties to the Lease. The Lease was originally executed on August 15, 1967, by Able Equity Corp., the landlord, and Woodlyne Supermarkets, Inc., the tenant.[4] The Lease was first amended on November 14, 1969 whereby Able Associates, Inc. took over as assignee of Able Equity Corp., and Woodlyne Supermarket, Inc. changed to Woodlyne Pathmark, Inc.[5] Those parties confirmed on April 29, 1970 that the term of the Lease would terminate on April 30, 1990.[6]

---

[1] Unless otherwise noted, the facts recited herein are taken from the revised version of the complaint. Docket Item ("D.I.") 5.

[2] *Id.* at ¶ 1.

[3] *Id.*

[4] *Id.* at ¶ 19.

[5] *Id.* at ¶ 20.

[6] *Id.* at ¶ 21.

But that date was extended numerous times. In 1979, Supermarkets General Corporation, took over as successor in interest to Woodlyne Pathmark, Inc., and exercised an option to extend the Lease until April 30, 1995.[7] "At that time, the tenant possessed four remaining options to extend the term of the Lease by five years, the last of which expired on April 30, 2015."[8]

Those options were increased through a letter agreement executed by Supermarkets General Corporation and Able Associates, Inc. on May 15, 1992 (the "1992 Agreement").[9] The 1992 Agreement granted two additional options to extend the Lease by five (5) years each extension (from 2015 to 2020 and from 2020 to 2025).[10] The 1992 Agreement contained the cost-of-living calculation at issue in this litigation (the "Calculation"). It provides:

> Notwithstanding anything to the contrary in Paragraph B of Section 4 of the Lease, the fixed annual rental during the last two renewal periods shall be increased by a sum equal to the greater of (i) 15% of the fixed annual rental payable at the expiration of the preceding Extension Period, or (ii) the Cost of Living Increase. The 'Cost of Living Increase' shall be 50% of the amount by which the fixed annual rental payable at the expiration of the preceding Extension Period would be increased by multiplying such rental by a fraction, the numerator of which shall be the Price Index for the March immediately preceding the

---

[7] *Id.* at ¶ 23.

[8] *Id.*

[9] *Id.* at ¶ 24.

[10] *Id.*

commencement of the Extension Period and the denominator of which shall be the Price Index for March, 2000.[11]

True to form, the parties to the 1992 Agreement continued to extend the renewal options. Through a May 6, 2003 letter agreement, Able Associates, Inc. and Pathmark Stores, Inc., the successor to Supermarkets General Corporation as the tenant under the Lease, agreed to an additional five-year renewal option (until 2030) (the "2003 Agreement").[12] The 2003 Agreement also slightly altered the Calculation—changing the minimum 15% rent increase each option to 12% (the "Revised Calculation").[13] The Revised Calculation continued, however, to include the same formula for calculating the cost-of-living increase.[14]

The Lease again changed hands in or around 2007, when The Great Atlantic & Pacific Tea Company ("A&P") succeeded to the interests of Pathmark Stores, Inc. as tenant under the Lease.[15] In or around November 2007, the Defendant joined onto the Lease when it succeeded to the interests of Able Associates, Inc. as landlord.[16]

---

[11] *Id.* at ¶ 25. Paragraph B of Section 4 of the Lease provides: "Any extension shall be upon the same terms, provisions, covenants and conditions as are in effect hereunder at the time of the commencement of such extension." D.I. 1, Ex. A.

[12] D.I. 5 ¶ 28.

[13] *Id.* at ¶ 29.

[14] *Id.* at ¶ 30.

[15] *Id.* at ¶ 31.

[16] *Id.* at ¶ 32.

The Defendant and A&P navigated the first renewal governed by the Revised Calculation.

A&P decided to exercise its option to extend the Lease for the 2015-2020 term (the "2015 Term"). At that time, the rent was $193,716.96 per year, or $16,143.08 per month.[17] The Defendant took the first stab at calculating the increase to this rent for the new term in an April 6, 2015 letter (the "2015 Letter").[18] In the 2015 Letter, the Defendant quoted the Calculation (ignoring the change to 12% in the Revised Calculation) and specified the two options as: $222,774.50 annually (or $18,564.54 monthly) under the 15% minimum or $328,046.11 annually (or $27,337.17 monthly) under the cost-of-living formula.[19] Because the latter was greater, the Defendant concluded in the 2015 Letter, "the new base rent will be the Cost of Living increase."[20]

A&P never challenged the Defendant's calculations in the 2015 Letter. A&P was, at that time, a Chapter 11 debtor-in-possession and "only several months later,"

---

[17] *Id.* at ¶ 35.

[18] *Id.* at ¶ 34.

[19] D.I. 1 at Ex. C. The Plaintiff avers the cost-of-living calculation was incorrect and, correctly calculated, would only result in an increase of $37,471.16 ($231,188.12 annual rent, $96,857.99 less than the total provided by the Defendant in the 2015 Letter). D.I. 5 ¶¶ 40-43.

[20] D.I. 1, Ex. C.

on November 17, 2015, A&P assigned, and the Plaintiff assumed, A&P's interest under the Lease.[21] Finally the stage was set for the Parties' instant dispute.

It began in September 2019. At that time, the Plaintiff advised the Defendant that "the CPI Rent Calculation used back in 2015 to establish the rental increase that was effective 5/1/2015 was calculated incorrectly."[22] The Plaintiff calculated the cost-of-living increase as $37,471.16, which was $96,857.99 less than the increase calculated by the Defendant.[23] The Plaintiff demanded a refund of the rent that it had overpaid.[24] The Defendant responded on October 3, 2019, disputing the miscalculation and refusing any refund.[25] Despite letters back and forth through November, the Parties were unable to resolve their dispute.[26]

But, despite their dispute, the Plaintiff exercised its option to extend the term of the Lease for an additional five-year term, from 2020 through 2025 (the "2020 Term").[27] The Defendant sent the Plaintiff a letter on April 16, 2020, calculating the

---

[21] D.I. 5 ¶ 47. On September 14, 2017, the Plaintiff signed an estoppel certificate in connection with the Defendant's mortgage. D.I. 12. As explained in the analysis section, I find this certificate should not be considered in connection with the pleading-stage motion before me.

[22] D.I. 5 ¶ 48.

[23] *Id.* at ¶ 40.

[24] *Id.* at ¶ 48.

[25] *Id.* at ¶ 49.

[26] *Id.* at ¶¶ 50-53.

[27] *Id.* at ¶ 54.

rent increase as $243,083.10.[28] The Plaintiff disputed this calculation again, arguing the proper increase should be $56,139.83.[29] The Plaintiff confirmed, however, it would pay the rent demanded by the Defendant under protest.[30]

The Plaintiff did so and later initiated this action, seeking to finally resolve the Parties' dispute, on July 15, 2022.[31] The complaint contains three counts: (1) declaratory judgment, (2) breach of contract, and (3) reformation of lease. Ultimately, the Plaintiff seeks (1) a declaration regarding the correct increase for the 2015 Term and the 2020 Term, (2) damages for the Defendant's miscalculation in breach of the Lease, and (3) reformation of the Lease such that the increase in rent for the 2020 Term is calculated off the March 2015 price index. The Defendant filed a motion to dismiss the complaint on September 23, 2022 (the "Motion").[32] The Motion was fully briefed and I heard oral argument on April 19, 2023, at which point I took the Motion under advisement.[33] This is my final report.

---

[28] *Id.* at ¶ 56.

[29] *Id.* at ¶ 58.

[30] *Id.* at ¶ 60.

[31] D.I. 1. The complaint was corrected on August 5, 2022, and factual averments herein are taken from the corrected pleading. D.I. 5.

[32] D.I. 7.

[33] D.I. 14, 19.

## II.   ANALYSIS

The Defendant seeks dismissal under Court of Chancery Rule 12(b)(6), the standard of review under which is settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[34]

The Defendant makes various arguments for dismissal, which I address in the following order.  First, I find the Plaintiff's claims arising from the 2015 Term are time-barred.  Second, I find the Plaintiff pled reasonably conceivable claims arising from the 2020 Term.  Third, I find the defenses to those claims (estoppel and waiver) are not clear on the face of the pleadings such that the claims should be dismissed.  Fourth, I find the Plaintiff has not adequately pled a claim for reformation of the Lease.  Fifth, and finally, I find without the reformation claim, the Plaintiff lacks an

---

[34] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted). Generally, "matters outside of the pleadings should not be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Vanderbilt Income & Growth Assocs., LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996).  Yet, the Defendant attached to its opening brief an estoppel certificate signed by the Plaintiff on September 14, 2017. D.I. 12. The Defendant failed, however, to respond to the Plaintiff's argument that the estoppel certificate was outside the permissible scope of review for this Motion, and I find any such arguments arising therefrom have been waived. *See Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003) ("It is settled Delaware law that a party waives an argument by not including it in its brief.").

equitable hook for this Court's jurisdiction and this matter should be dismissed for lack of subject matter jurisdiction with leave to transfer.

## A. The Plaintiff's claims regarding the 2015 Term are time-barred.

The Plaintiff brings two (2) claims seeking relief related to the 2015 Term for (1) declaratory judgment as to the correct increase and rent owed and (2) for breach of contract. Both invite a three-year statute of limitations, which the Plaintiff has failed to meet; without any viable claim for tolling, I find the Plaintiff's claims arising from the 2015 Term should be dismissed as time-barred.

I begin with the applicable statute of limitations. Where, as here, "a plaintiff has advanced a legal claim and seeks a form of relief that is available from a court at law, such as monetary damages, then the court will apply the statute of limitations in the same manner as a law court."[35] Because the claims relating to the 2015 Term arise out of the Lease and the 1992 Agreement, which are governed by the promises contained therein, I find the three year statute of limitations in 10 *Del. C.* § 8106 applies to both the contract claim and request for declaratory relief.[36]

---

[35] *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1194 (Del. Ch. 2022). Because they are legal claims, through which the Plaintiff seeks relief available at a court of law, I decline to engage in a laches analysis for the breach of contract or declaratory judgment claims. A laches analysis would apply to the Plaintiff's reformation claim. "If a plaintiff has presented a court of equity with an equitable claim or if the plaintiff has sought equitable relief, then the court will apply the doctrine of laches." *Id.* But I decline to engage in a laches analysis for the reformation claim because I find it fails on its merits.

[36] *See Eluv Hldgs. (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *5 (Del. Ch. Mar. 26, 2013).

Thus, I move on to whether those claims are time-barred. "Determining whether a claim is time-barred by a statute of limitations requires determining three things: (1) the date the cause of action accrued, (2) whether the cause of action has been tolled, and (3) if the cause of action has been tolled, whether and when Plaintiffs were placed on inquiry notice of their claims."[37] The Parties dispute the accrual date for the Plaintiff's claims; thus, I focus my inquiry thereon.

The Defendant argues that the Plaintiff's claims accrued in 2015, when A&P first paid the allegedly miscalculated rent for the 2015 Term. The Plaintiff disagrees and argues the Lease is a continuing contract and the claims have not yet accrued. Alternatively, the Plaintiff argues the Lease is a severable contract, such that only the claims arising out of the 2015 Term are time-barred. The Plaintiff further argues that I cannot determine if the Lease is a continuing or severable contract at the pleading stage. I disagree and find the Lease is a severable contract, the claims arising out of the 2015 Term are time-barred, but the claims arising out of the 2020 Term remain viable.

The claims arising from the 2015 Term accrued by no later than May 1, 2015. "In Delaware, for contract claims, the wrongful act occurs at the time a contract is breached. Thus, the cause of action accrues at the time of breach."[38] But "[w]here

---

[37] *Id.* at *6.

[38] *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d at 1196 (cleaned up).

there is a continuing contract and a continuing breach, the applicable statute of limitations begins to run only when 'full damages can be ascertained and recovered.'"[39] "The continuing breach doctrine is narrow and typically is applied only in unusual situations."[40] On the other end of the spectrum are the more common severable contracts. Unlike continuing contracts that extend the accrual date, "[c]onversely, 'if the Court finds the contract severable in nature, the statute of limitations generally begins to run on each severable portion when a party breaches that portion of the contract.'"[41]

To answer the question of continuing versus severable, I must "consider whether the breach(es) can be divided such that the plaintiff could have alleged a *prima facie* case for breach of contract . . . after a single incident. If so, . . . the 'continuing breach' doctrine does not apply even when confronted with numerous repeated wrongs of similar, if not same, character over an extended period."[42] Such an inquiry is appropriate for disposition at the pleading where, such as here, there are no factual disputes.[43]

---

[39] *Scott Fetzer Co. v. Douglas Components Corp.*, 1994 WL 148282, at *5 (Del. Ch. Apr. 12, 1994).

[40] *AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476, at *11 (Del. Ch. Aug. 22, 2016).

[41] *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398, at *3 (Del. Super. Dec. 6, 2012).

[42] *AM Gen. Holdings LLC*, 2016 WL 4440476, at *12 (cleaned up).

[43] *See Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Apr. 25, 2007).

Here, the agreement expressly provided for two optional terms, the 2015 Term and the 2020 Term. The terms are distinct, and the Calculation provided a formula to determine the rent for each term, should the tenant exercise its right to extend. Because the rental amount and due date for such rent was defined precisely for the 2015 Term, irrespective of the 2020 Term, the tenant could have alleged a *prima facie* claim for breach or declaratory judgment in 2015 when the Defendant (mis)calculated the rental increase and A&P began paying the same (May 1, 2015). Thus, the time to bring a claim arising from that breach accrued on May 1, 2015 and the statute of limitations expired May 1, 2018.[44] Under that same rationale, however, the 2015 Term and 2020 Term were severable such that the Plaintiff may still challenge the (mis)calculation for the 2020 Term, which happened less than three (3) years before this action was filed. Thus, the claims arising from the 2015 Term, and only those claims, should be dismissed as time-barred.

---

[44] This period may be imposed against the Plaintiff as assignee to A&P. *See Madison Fund, Inc. v. Midland Glass Co., Inc.*, 1980 WL 332958, at *2 (Del. Super. Aug. 11, 1980) (explaining the "rudimentary principle of contract law" that "defenses such as the statute of limitations may be interposed against the assignee if it was available against the assignor"). I find the Plaintiff's case law inapposite. *See Matter of Burger*, 125 B.R. 894 (Bankr. D. Del. 1991); *Smith v. Mattia*, 2010 WL 412030 (Del. Ch. Feb. 1, 2010); *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*, 2002 WL 1042089 (Del. Super. May 23, 2002).

**B.**    **The Plaintiff has adequately pled that the Defendant miscalculated the cost-of-living increase.**

The Defendant argues that the complaint fails on the merits because the cost-of-living increase was calculated correctly, thus defeating any claim for declaratory relief or breach of contract relating to the 2020 Term. I find it is reasonably conceivable that the Defendant miscalculated the increase, and this action should proceed to discovery.

"When a contract's language is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions."[45] A contract will only be viewed as ambiguous where the Court "may reasonably ascribe multiple and different interpretations" to its terms.[46] "Ambiguity does not exist merely because the parties disagree about what the contract means. When interpreting contracts, this Court construe[s] them as a whole and give[s] effect to every provision if it is reasonably possible."[47]

Here, the Parties disagree regarding how the cost-of-living increase should be calculated under the Calculation.[48] Despite their disagreement, I find the Calculation

---

[45] *S'holder Representative Servs. LLC v. HPI Hldgs., LLC*, 2023 WL 3092895, at \*4 (Del. Ch. Apr. 26, 2023) (citations omitted).

[46] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[47] *Weinberg v. Waystar, Inc.*, 2022 WL 2452141, at \*3 (Del. Ch. July 6, 2022) (cleaned up).

[48] The Plaintiff argues for the following calculation: [(Current Rent * [$CPI_{current}/CPI_{2000}$]) − (Current Rent)] * .5 = cost-of-living increase. D.I. 13, p. 7. The Defendant counters with

is unambiguous, and that it is reasonably conceivable that the Plaintiff's proposed construction thereof was the intent of the parties.

The Calculation is, again, as follows:

> The 'Cost of Living Increase' shall be 50% of the amount by which the fixed annual rental payable at the expiration of the preceding Extension Period would be increased by multiplying such rental by a fraction, the numerator of which shall be the Price Index for the March 8 immediately preceding the commencement of the Extension Period and the denominator of which shall be the Price Index for March, 2000.[49]

The Parties agree that this narrative explains a fraction with the current price index as the numerator and the price index for March 2000 as the denominator. The Parties also agree that such fraction should be multiplied by the current rent. The dispute is whether the number resulting from this multiplication is "the amount by which the fixed annual rental payable at the expiration of the preceding Extension Period would be increased." The Defendant argues it is and, thus, the only remaining step is to multiply by 50%. The Plaintiff advocates for an interim step—to subtract the current rent from the resulting number before halving the amount.

I find the Plaintiff's construction a reasonably conceivable interpretation that gives effect to all terms in the Calculation. The Plaintiff's interim step ensures that

---

the following: $.5 * \text{Current Rent} * (\text{CPI}_{current}/\text{CPI}_{2000}) = \text{cost-of-living increase}$. D.I. 11, p. 13.

[49] D.I. 5 ¶ 25. Paragraph B of Section 4 of the Lease does not contain contradictory terms. D.I. 12, Ex. 1.

the Calculation considers the amount the current rent would be increased if multiplied by the fraction and then halves the amount of the increase. Conversely, by skipping a step, the Defendant gives no meaning to "the amount by which the fixed annual rental payable at the expiration of the preceding Extension Period would be increased" and, effectively, writes such language out of the Calculation. The Defendant's interpretation asks the Court to read the Calculation as:

> The 'Cost of Living Increase' shall be 50% of the amount ~~by which the fixed annual rental payable at the expiration of the preceding Extension Period would be increased~~ [reached] by multiplying such rental by a fraction, the numerator of which shall be the Price Index for the March 8 immediately preceding the commencement of the Extension Period and the denominator of which shall be the Price Index for March, 2000.

Such is not an interpretation that supports dismissal at the pleading stage.[50] Under the Plaintiff's reasonable interpretation, the Defendant misapplied the Calculation for the 2020 Term. Thus, the Plaintiff's claims for declaratory judgment and breach arising therefrom should survive the pleading stage.[51]

---

[50] Such remains true even if the Calculation is read as ambiguous. "In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (emphasis in original; citations omitted). The Defendant's interpretation is not the only reasonable construction.

[51] The Defendant argues that the Parties' course of performance should be given great weight in construing the terms of the Lease and 1992 Agreement. D.I. 11, p. 15. Because I find it reasonably conceivable that the contract is unambiguous, course of performance is not an appropriate consideration, let alone a reason to dismiss at this stage. *See Vanderbilt Income & Growth Assocs., LLC*, 691 A.2d at 612.

C.    **It is not clear that the Plaintiff's claims regarding the 2020 Term are barred by equitable estoppel or waiver.**

The Defendant argues that the Plaintiff should be estopped from raising, or has waived, its claims. Sticking to the pleadings, the Defendant's argument is that after the limitations period for the claims under the 2015 Term expired, and notwithstanding its objections to the calculations thereunder, the Plaintiff exercised the seventh option with the same alleged miscalculation and "delayed an additional two years and five months before bringing this suit."[52] The Defendant argues, by doing so, the Plaintiff reaffirmed the alleged miscalculation for the 2015 Term and waived, or should be estopped from challenging, the same alleged miscalculation for the 2020 Term. I find this argument fails to support dismissal at the pleading stage.

> In ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings. Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate.[53]

For the reasons explained above, the Plaintiff pled a reasonably conceivable claim for relief related to the Defendant's application of the Calculation for the 2020 Term. Whether the affirmative defenses of waiver or estoppel should bar that relief is a

---

[52] D.I. 11, p. 24.

[53] *Reid v. Spazio*, 970 A.2d 176, 183–84 (Del. 2009) (citations omitted).

highly factual inquiry that is not clear on the pleadings and is more appropriately resolved in the later stages of this proceeding.

### D. The Plaintiff has not adequately pled a claim for reformation.

The Defendant argues that the Plaintiff failed to plead a reasonably conceivable claim for reformation. I agree.

For a reformation claim to survive a motion to dismiss a plaintiff must plead "(i) that the parties reached a definite agreement before executing the final contract; (ii) that the final contract failed to incorporate the terms of the agreement; (iii) that the parties' mutually mistaken belief reflected the true parties' true agreement; and (iv) the precise mistake the parties made."[54]

For the mistake element, I look to Court of Chancery Rule 9(b), which requires "the circumstances constituting fraud or mistake shall be stated with particularity." Applying the Rule 9(b) standard to a reformation claim, the plaintiff must allege "(i) the terms of an oral agreement between the parties; (ii) the execution of a written agreement that was intended, but failed, to incorporate those terms; and (iii) the parties' mutual—but mistaken—belief that the writing reflected their true agreement and (iv) the precise mistake."[55]

---

[54] *Deluxe Ent. Servs. Inc. v. DLX Acq. Corp.*, 2021 WL 1169905, at *9 (Del. Ch. Mar. 29, 2021).

[55] *Joyce v. RCN Corp.*, 2003 WL 21517864, at *4 (Del. Ch. July 1, 2003).

Application of this standard was demonstrated by then-Vice Chancellor Jacobs in *Joyce v. RCN Corp.*[56] There, a buyer sought reformation of a written merger agreement. In the complaint, the plaintiff alleged that the contract did not accurately express the terms the parties had agreed to orally, specifically identified those oral terms, and showed how the written terms deviated from those oral terms. The complaint also explained the effect of that error on the parties. Then-Vice Chancellor Jacobs found the complaint was sufficient to survive the motion to dismiss.[57]

Here, the Plaintiff's complaint pales in comparison to the specificity found in *Joyce*. The Plaintiff seeks reformation of the Calculation such that the denominator of the fraction used to calculate the cost-of-living increase changes for the 2020 Term to March 2015, rather than March 2000. Per the Plaintiff, this is what the Calculation "should" have provided, such that the increase only accounts for the immediately proceeding five (5) years. The Plaintiff reasons, anything earlier would have already been accounted for in the prior increase.

The logic of the Plaintiff's argument is understandable. But what is missing is any factual predicate that the contracting parties reached a different agreement than that memorialized. As much as the Plaintiff may wish, or believe, the Lease

---

[56] *Id.*

[57] *Id.* at *6.

should calculate the cost-of-living adjustment from the immediately preceding five (5) years, instead of from 2000, the Plaintiff has failed to plead any factual predicate that the original contracting parties agreed to do so and the written agreement was the product of mutual mistake. Tying the 2020 Term increase to the March 2015 index may have been a better or more acceptable agreement, particularly for the tenant, but "[u]nder Delaware law, sophisticated parties are bound by the terms of their agreement. Even if the bargain they strike ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written."[58] A claim for reformation is not viable when supported only by averments that a bad deal was memorialized; the Plaintiff needed—and failed—to support the claim with factual averments demonstrating that the Parties reached a definite agreement different than the one memorialized. Without such, the Plaintiff has failed to plead a reasonably conceivable claim for reformation and Count III should be dismissed.

E.      **The Plaintiff's remaining claims should be dismissed for lack of subject matter jurisdiction, with leave to transfer.**

For the reasons explained above, I find the Motion should be granted in part and denied in part such that only the Plaintiff's claims for declaratory judgment and breach of contract relating to the 2020 Term should survive. But that does not end my inquiry.

---

[58] *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

Under Court of Chancery Rule 12(h)(3) "[w]henever it appears . . . that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action." "The issue of subject matter jurisdiction is so crucial that it may be raised . . . by the court *sua sponte*."[59]  As a judicial officer for the Court, I am "obligated to decide whether [this] matter [remains] within the equitable jurisdiction of this Court" if the recommendations herein are adopted.[60]  I find, if adopted, the recommendations in this report leave the Court without subject matter jurisdiction over the remaining claims.

This Court is "proudly a court of limited subject matter jurisdiction."[61]  It "may acquire subject matter jurisdiction in any one of three ways: (i) the assertion of an equitable claim; (ii) a request for equitable relief; and (iii) by statutory grant."[62] Here, the Plaintiff's only equitable claim was for reformation. I recommend herein that such claim be dismissed.  The only other claims—for declaratory judgment and breach of contract—are legal claims, for which the Plaintiff as an adequate remedy

---

[59] *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009).

[60] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991).

[61] *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *1 (Del. Ch. July 8, 2021).

[62] *Milhollan v. Live Ventures, Inc.*, 2023 WL 2943237, at *2 (Del. Ch. Apr. 13, 2023) (citing *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)).

at law.[63]  Thus, the Plaintiff's remaining claims should be dismissed and, under 10 *Del. C.* § 1902, the Plaintiff should be granted sixty (60) days from a final dismissal decision to request transfer to a court with jurisdiction.

## III.  CONCLUSION

For the above reasons, I find that the Motion should be granted in part and denied in part.  Any claims arising out of the 2015 Term should be dismissed as time-barred.  As should Count III, through which the Plaintiff failed to state a reasonably conceivable claim for reformation.  But claims arising from the 2020 Term are viable, just not in this Court.  Such claims should be dismissed for lack of subject matter jurisdiction if the Plaintiff does not elect to transfer them to a court with jurisdiction as provided under 10 *Del. C.* § 1902.

This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Selena E. Molina*

Magistrate in Chancery

---

[63] *See Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970) (explaining that the Declaratory Judgment Act only provides this Court with jurisdiction over claims for declaratory relief where "there is any underlying basis for equity jurisdiction").

The Plaintiff included 6 *Del. C.* § 18-111 as a basis for this Court's jurisdiction. *See* D.I. 5, ¶ 17.  The Plaintiff has not, however, pled a claim under the Limited Liability Company Act, such that there is a separate statutory basis for this Court's jurisdiction.