COURT OF CHANCERY
OF THE
STATE OF DELAWARE

**LOREN MITCHELL**
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

January 31, 2024

Kathleen DeLacy, Esquire
Martin D. Page, Esquire
Reger Rizzo & Darnall LLP
1521 Concord Pike, Suite 305
Wilmington, DE 19803

Jason C. Powell, Esquire
Thomas J. Reichert, Esquire
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

RE:  *Angela Okafor Carlisle v. Rone Everett*,
C.A. No. 2023-0077-LM

Dear Counsel & Parties:

Pending before me is Respondent's motion to dismiss the petition for removal of the personal representative of the Estate of Sharif Kihill Green.  Briefing on the motion concluded on September 6, 2023.  I heard arguments regarding the motion on October 20, 2023, and during the telephonic hearing, the parties requested to submit supplemental arguments on the single issue of the Full Faith and Credit Clause of the United States Constitution.  As explained herein, after consideration of the parties' briefs and oral argument, I recommend the motion be granted and this action dismissed.  This is my final report.

## I.    BACKGROUND[1]

On June 18, 2022, 43-year-old Sharif Kihlil Green died at Deborah Heart and Lung Center in Burlington County, New Jersey.[2]  According to the death certificate, The Delaware Register of Wills ("ROW") granted letters of administration regarding Green's Estate on August 26, 2022 to Rone Everett, his wife pursuant to a marriage certificate issued in Pennsylvania on June 6, 2022.[3]

On December 14, 2022, Green's mother, Angela Okafor Carlisle wrote the ROW disputing the grant of letters administration to Everett based on her claim that the marriage to her son was "impossible".[4]  On the same day, the Chief Deputy of

---

[1] Unless otherwise noted, the facts recited herein are taken from the Complaint and integral Register of Wills ("ROW") documents, case no. ROW 181736, to which the Court takes judicial notice.  *See Fortis Advisors LLC v. Allergan W.C. Holdings, Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019) ("On a motion to dismiss, the Court may consider documents that are integral to the complaint, but documents outside the pleadings may be considered only in particular instances and for carefully limited purposes. Whether a document is integral to a claim and incorporated into a complaint is largely a facts-and circumstances inquiry. Generally, a document is integral to the claim if it is the source for the . . . facts as pled in the complaint.") (citations and quotation marks omitted). ROW documents will be cited from the ROW docket as ROW Docket Item ("ROW D.I.") and items from the docket in this case cited as "D.I".  The Complaint here is cited as D.I. 1. The transcript of the hearing has not been finalized. Citations in the form Draft Tr. – refer to a rough copy of the transcript.

[2] ROW D.I. 1.

[3] ROW D.I. 3.

[4] ROW D.I. 5.

the Register of Wills contacted several relevant parties to investigate her claim.[5] The ROW contacted Tiffany Gordon, the Commonwealth of Pennsylvania, County of Philadelphia Orphan's Court Clerk who signed the marriage certificate.[6] The ROW asked the Clerk to confirm the authenticity of the marriage certificate, explaining that Green's mother claimed that Green was "hospitalized in the State of New Jersey from June 3 until his death on June 18."[7] The ROW further questioned the Pennsylvania Seal's placement on the marriage certificate, noting that "[t]he bottom half (license portion)" included the Orphan's Court seal but the top half (certificate portion) did not.[8] The following day the ROW sent an additional letter to Gordon, confirming that the Philadelphia County office had the actual marriage certificate, not produced to the ROW, on file with them.[9] The ROW also sent a separate letter

---

[5] ROW D.I. 6-8; The ROW contacted several parties since being made aware of Petitioner's assertion and objection to the marriage and the authenticity of the certificate.

[6] ROW D. I. 6.

[7] *Id*. (Request to Philadelphia County clerk for confirmation of authenticity of marriage certificate of decedent).

[8] *Id*.

[9] ROW D. I. 8 (Inquiry to the Philadelphia County marriage clerk on filing of certificate of solemnization of the decedent's marriage).

to Mr. Lewis Rutherford, the officiant listed on the certificate, requesting written confirmation of personally witnessing the decedent's marriage.[10]

Reasonably, Philadelphia County responded to the ROW's inquiries a few weeks after receiving the letters.[11]  In a letter dated December 22, 2022, and received on December 28, uploaded on January 3, 2023, Philadelphia County confirmed receipt of the communications from the ROW stating:

> A Marriage Licensing application was completed and approved by our office for [Sharif Kihill Green and Rone Nyiesha Everett] on June 1, 2022, during a Zoom meeting.  The applicants indicated that Mr. Green was hospitalized at the time and provided proper documentation for the Marriage License Clerk to conduct a Zoom Sick Call.
>
> Proper documentation would have included a completed application and a Doctor's Note from the attending physician indicating the hospitalized applicant is of sound mind and body to make their own decision and has a diagnosis of a terminal illness.  The Doctor's Note must be on the physician's letterhead and signed by the physician.

---

[10] ROW D.I. 7 (Letter to officiant requesting written confirmation of personally witnessing the decedent's marriage).

[11] *See* ROW D. I. 11.

> We are searching for our paper file on this matter so that we may confirm the exact documentation that was provided.[12]

A week later, a Philadelphia Assistant Solicitor confirmed by email that "[t]he Clerk of Orphans' Court did receive and accept the fully executed marriage certificate…between Sharif Kihill Green and Rone N. Everett."[13]

On January 24, 2023, Angela Okafor Carlisle filed this petition for removal of Everett as Personal Representative on the basis that the marriage certificate is invalid.[14] On March 6, 2023, Carlisle filed a Petition for a Preliminary Injunction, seeking an order directing Everett to cease performing any actions regarding Green's Estate until an adjudication on the merits of the instant action.[15] Finally, Petitioner filed a Motion for Expedited Proceedings on March 21, 2023.[16]

I held a hearing and granted the Motions to Expedite and for Injunction on March 31, 2023.[17] On May 5, 2023, Jason Powell entered his appearance on behalf

---

[12] ROW D. I. 11 (Letter from Philadelphia County confirming review of documentation for decedent's marriage license issued during hospitalization).

[13] ROW D. I. 12 (Email from Philadelphia County Assistant Solicitor confirm that the marriage certificate was accepted for filing).

[14] D. I. 1.

[15] D. I. 3.

[16] D. I. 8.

[17] D. I. 14-15.

of Respondent, Everett,[18] and about a month later, filed this Motion to Dismiss (the "Motion") on June 15, 2023.[19] I granted the parties' stipulated briefing schedule on June 16.[20] The Opening and Answering briefing on the Motion to Dismiss concluded on August 22.[21] The parties submitted a new briefing schedule on August 28, 2023.[22] Following the briefing, I heard oral argument on the motion on October 20, 2023.[23] At the hearing, the parties requested to submit additional briefing on an issue the Court presented at oral argument. Supplemental briefing concluded on November 20.[24]

## II.    Analysis

The Respondent seeks dismissal under Court of Chancery Rule 12(b)(1). The Court of Chancery will grant a Rule 12(b)(1) motion to dismiss "if it appears from the record that the Court does not have jurisdiction over the claim."[25] Under section

---

[18] D.I. 16.

[19] D.I. 17.

[20] D. I. 20.

[21] D.I. 20-22.

[22] D. I. 24.

[23] D. I. 29.

[24] D.I. 33.

[25] *Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sept. 10, 2008).

342 of Title 10 of the Delaware Code, "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[26] This Court acquires subject matter jurisdiction over a case "in only three ways: (1) the invocation of an equitable right; (2) the request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction."[27]

The burden is on the Petitioner to establish this Court's jurisdiction over a particular subject matter.[28] "When a party challenges this Court's subject matter jurisdiction over a particular case, the '[C]ourt must review the allegations of the complaint as a whole to determine the true nature of the claim.'"[29]

> Chancery jurisdiction is not conferred by the incantation of magic words. Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will excuse the [C]ourt ... from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal

---

[26] 10 Del.C. § 342.

[27] *Quarum v. Mitchell Int'l, Inc.*, 2019 WL 158153, at *2 (Del. Ch. Jan. 10, 2019) (internal quotation marks omitted).

[28] *Id.* (quoting *Scattered Corp. v. Chi. Stock Exch., Inc.*, 671 A.2d 874, 877 (Del. Ch. 1994)).

[29] *Id.* (alteration in original) (quoting *Christiana Town Ctr., LLC v. New Castle Cty.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003), *aff'd*, 841 A.2d 307 (Del. 2004)).

remedy is available and fully adequate. If a realistic evaluation leads to the conclusion that an adequate legal remedy is available this [C]ourt, in conformity with the command of section 342 of title 10 of the Delaware Code will not accept jurisdiction over the matter.[28]

Further, "[i]n deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[30] In other words, "the court must address the nature of the wrong alleged and the available remedy to determine whether a legal, as opposed to an equitable remedy, is available and sufficiently adequate."[31] The court may consider evidence outside the pleadings in resolving that issue.[32]

## A.     This Court Lacks Subject Matter Jurisdiction

Petitioner asserts that "[t]he entire scope of this question is under the exclusive purview of the Court of Chancery, which has exclusive statutory and equitable

---

[30] *Candlewood Timber Group,* 859 A.2d at 997; *see also Diebold Computer Leasing, Inc. v. Commercial Credit Corp.,* 267 A.2d 586, 588 (Del. 1970).

[31] *IMO Indus., Inc. v. Sierra Int'l, Inc.,* 2001 WL 1192201, at *2 (Del. Ch. Oct.1, 2001).

[32] Ct. Ch. R. 12(b)(1); *Sloan v. Segal,* 2008 WL 81513, at *6 (Del.Ch. Jan.3, 2008) (citing *Simon v. Navellier Series Fund,* 2000 WL 1597890, at *5 (Del.Ch. Oct.19, 2000)); *see also Maloney-Refaie,* 2008 WL 2679792, at *7 (citing *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC,* 922 A.2d 417, 429 n. 15 (Del.Ch.2007)).

jurisdiction over questions concerning a Delaware Estate.[33]  Petitioner characterizes the issue under Delaware's scope of authority over the decedent's estate.  In turn, Respondent argues that Petitioner's claim is a disguised annulment action sought in this Court, because the Petitioner failed to timely bring action in Family Court.[34]

Under 12 Del. C. § 1505(b)(1),

> The persons entitled to letters of administration shall be those in the first of the following classes of persons which shall have a member of that class living and not under an incapacity: Spouse of the decedent; children of the decedent; parents of the decedent; siblings of the whole blood and half-blood of the decedent.

Here, the Petitioner seeks removal of Respondent as Personal Representative of the decedent's estate only because she believes that the marriage certificate used to obtain the letters of administration was obtained fraudulently.  She says the marriage to her son was "impossible" because her son was hospitalized on June 6, 2022, in New Jersey when the marriage certificate was issued from Philadelphia, Pennsylvania.[35]

---

[33] Ans Br. at 1.

[34] Op. Br. at D.I. 20.

[35] Ans. Br. at 7.

"[E]quity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame'" to equity jurisdiction.[36]  It is clear that while this petition challenges the appointment of the Respondent as the Personal Representative, it is a thinly veiled disguise to challenge a Pennsylvania marriage in a Delaware Court.  This Court's jurisdiction does not extend to the validity of marriages, which are under the proper jurisdiction of Family Court.  To the extent that equity would require a review of a Pennsylvania marriage, the Philadelphia Orphan's Court handles matters of equity and would be best position to review and interpret its own law.

### B.     Register of Wills Investigation

In addressing the nature of the wrong alleged and the availability of a remedy, the Court may consider evidence outside the pleadings to resolve the issue.  To do this, I must consider what steps the ROWs took in investigating the initial claim of fraud, since the claim was properly presented to them.  The ROWs contacted the

---

[36] *Quarum v. Mitchell Int'l, Inc.*, 2019 WL 158153, at *3 (Del. Ch. Jan. 10, 2019) (quoting *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991)).

Philadelphia Orphan's Court, who issued the marriage certificate, and informed the Orphan's Court of the allegation of fraud and revealed decedent's location on the date the marriage certificate was issue.[37]  The ROWs also informed the Court of the nature of the inquiry and that decedent's marriage, and ultimately, his wife's appointment as Personal Representative, was under scrutiny.[38]  As a Court handling similar inquiries daily, the Court confirmed its procedure for handling parties who get married via zoom due to hospitalization.[39]  They confirmed that the Attending Physician submitted a verification that the decedent was of sound mind when the ceremony occurred.[40]

The Pennsylvania Court of Common Pleas Orphans' Division shares similarities with this Court in that it is a Court of equity. They adjudicate cases involving the personal and property rights of individuals incapable of handling their own affairs, such as minors, incapacitated person, trusts, and decedents.[41]  Similarly situated to the Court of Chancery, the Orphans' Court has the authority to appoint

---

[37] ROW D.I. 6.

[38] *Id*.

[39] *See* ROW D.I. 11.

[40] *Id*.

[41] https://exhibits.temple.edu/s/civil-rights-in-a-northern-cit/page/orphans--court.

guardians for both minors and incapacitated persons and adjudicate disputes over the administration of decedents' estates, including approving accounts of administrators and/or executors and resolving appeals from the Register of Wills. It handles inheritance and estate tax disputes, approves civil settlements involving minor plaintiffs and/or estates, and operates the Marriage License Bureau.[42]

Accordingly, it appears that not only was an Assistant Solicitor of the Orphan's Court best situated to confirm the validity of the marriage, but the fact also that the Orphan's Court handles these issues related to Pennsylvania's marriages confirms the existence of a competent Court to address Respondent's issue.

## C.    Full Faith & Credit Clause

Under the Full Faith and Credit Clause of the United States Constitution, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."[43]  As a matter of Delaware law, marriages that are valid in another state will be upheld and recognized in Delaware.[44] Under this

---

[42] *Id.*

[43] U.S. Const. Art. IV. § 1.

[44] *Matter of Estate of Necastro*, 1990 WL 105620 (Del. Ch. 1990) (Upholding a Nevada common-law marriage decree which could not have been entered into under Delaware law. Stating, "a common-law marriage that is valid in another state will be upheld and recognized in Delaware.").

provision, a Delaware Court must recognize the actions of a court in another state.[45]

Here, The Pennsylvania Orphan's Court performed an investigation at the request of the Delaware Register of Wills. The Pennsylvania Orphan's Court concluded that the proper protocols were followed on their end and the required documentation was provided by the parties to obtain a valid marriage certificate.

To the extent that Respondent claims the Full Faith and Credit Clause of the U.S. Constitution requires this Court to hear her claim because of the allegation of fraud, I decline to address it and recommend dismissal of the claim. Even if I had considered the claim, I find the complaint fails to state a claim of fraud with the requisite specificity needed to overcome the record developed with the ROWs. For example, the record shows the parties applied for the marriage application on June 1st—which is five days before Petitioner alleges that the decedent was hospitalized. Further, decedent's death certificate indicated that his death was associated with a long-term illness of cardiomyopathy. Rather than an allegation of fraud, the information alleged appears to show that decedent made a personal decision that Petitioner was unaware of, therefore had I considered it, the complaint would fail for

---

[45] *See Pyott v. La. Mun. Police Emps. Ret. Sys.*, 74 A.3d 612, 615-16 (Del. 2013).

lack of specificity. Thus, the Full Faith and Credit Clause supports this Court's acknowledgement of the Pennsylvania marriage.

## III.    Conclusion

For the foregoing reasons stated, Petitioner's claim is hereby dismissed.  This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery