**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report: July 16, 2024
Date Submitted: July 2, 2024

Daniel F. McAllister, Esquire
McAllister Firm LLC
800 N. King St., Suite 203
Wilmington, Delaware 19801

Sean A. Meluney, Esquire
William M. Alleman, Jr., Esquire
Meluney Alleman & Spence, LLC
1143 Savannah Rd., Suite 3-A
Lewes, Delaware 19958

> RE: *D.R. Horton, Inc. - New Jersey v. Bunting Macks LLC, et al.*,
> C.A. No. 2024-0070-BWD

Dear Counsel:

As you know, on June 18, 2024, I issued a final report resolving Bunting Macks' motion for partial judgment on the pleadings (the "Final Report").[1] *See D.R. Horton, Inc. - New Jersey v. Bunting Macks LLC*, 2024 WL 3045169 (Del. Ch. June 18, 2024) [hereinafter, "Final Report"]. I assume the readers' familiarity with the Final Report, which concluded that an order of specific performance is unavailable under the terms of the Agreement and directed the parties to submit supplemental memoranda addressing the basis (if any) for the Court's subject matter jurisdiction over the remaining issues in this action. *Id.* at *1, *8.

---

[1] Undefined capitalized terms have the meanings ascribed in the Final Report.

On June 25, 2024, Horton moved for reargument of the Final Report (the "Motion for Reargument"). D.R. Horton, Inc. - New Jersey's Mot. For Reargument [hereinafter, "Mot."], Dkt. 56. Defendants filed an opposition to the Motion for Reargument on July 2, 2024. Defs.' Opp'n To D.R. Horton, Inc. - New Jersey's Mot. For Reargument, Dkt. 59. The same day, the parties filed supplemental memoranda addressing subject matter jurisdiction. *See* Pl. D.R. Horton, Inc. - New Jersey's Mem. Of Law Re: Continuing Jurisdiction [hereinafter, "Pl.'s Supp. Br."], Dkt. 58; Defs.' Supp. Br. Regarding Subject Matter Jurisdiction [hereinafter, "Defs.' Supp. Br."], Dkt. 60. This final report addresses the Motion for Reargument and the lingering question of subject matter jurisdiction.

## I.     THE MOTION FOR REARGUMENT

Horton moves for reargument of the Final Report under Court of Chancery Rule 59(f). "On a motion for reargument, the movant bears a heavy burden." *Biocomposites GmbH v. Artoss, Inc.*, 2024 WL 2151937, at *1 (Del. Ch. May 14, 2024) (citation and internal quotation marks omitted). "To succeed and obtain reargument, the moving party must demonstrate that the Court's decision was predicated upon a misunderstanding of a material fact or a misapplication of the law." *Fisk Ventures, LLC v. Segal*, 2008 WL 2721743, at *1 (Del. Ch. July 3, 2008) (citation and internal quotation marks omitted), *aff'd*, 984 A.2d 124, 2009 WL

3338094 (Del. 2009) (TABLE). "If a motion for reargument 'merely rehashes arguments already made by the parties and considered by the Court' in rendering the decision for which reargument is sought, the motion must be denied." *Goldman v. LBG Real Est. Cos., LLC*, 2024 WL 773537, at *1 (Del. Ch. Feb. 26, 2024) (citation omitted).

Horton seeks reargument on three grounds. First, Horton asserts that the Final Report improperly "expanded [the] scope of the issue[s]" presented on Bunting Macks' motion for partial judgment on the pleadings. Mot. ¶ 21. Horton claims that "neither party contended at the time that the passing of the Outside Closing Date entirely foreclosed specific performance" and, in fact, "both parties agreed that specific performance was an available remedy for some of Horton's breach claims under the Agreement . . . ." *Id*. ¶ 22. That is wrong. In its opening brief, Bunting Macks argued that, "[b]ased on settled Delaware law, Horton cannot obtain the 'specific performance' or injunctions it seeks because they would extend the Phase II closing date," and sought a determination that "Horton cannot obtain Court orders compelling Bunting Macks to obtain purportedly missing Approvals and then

require Bunting Macks to sell Phase II to Horton at some unspecified date in the future." Dkt. 31 at 5. The Final Report resolves those fairly presented arguments.[2]

Second, Horton claims "the Final Report fails to draw all reasonable inferences in Horton's favor . . . ." Mot. at 7; *see also id*. ¶¶ 15-17. Horton's explanation raises eyebrows: while Horton's Complaint alleges that Bunting Macks breached the Agreement by failing to diligently and in good faith seek the Approvals, Horton now argues that the Court improperly assumed Bunting Macks breached the Agreement and should have inferred that "Bunting Macks obtained all the Approvals." *See* Mot. ¶ 16 ("[A] reasonable inference that can be drawn from the Complaint and 9 Exhibits is that Bunting Macks obtained all the Approvals. If so, then Section 6(b) did not afford Horton the option to extend the outside closing date."); *id*. ¶ 19 (acknowledging "this might be an inference against Horton"). To state the obvious, the Court did not err by failing to draw inferences *against* Horton.

Third, Horton argues that "the Final Report misapprehends the fact that Horton filed its lawsuit before the cure period expired, and before the parties'

---

[2] While Horton suggests that the Final Report misunderstood or failed to consider Horton's positions on the prevention doctrine and material breach, the Final Report considered and rejected both. *See* Final Report at \*6-\*8 (rejecting Horton's argument that Bunting Macks' alleged breaches caused the passing of the Phase II Outside Closing Date); *id*. at \*8 (rejecting Horton's argument that Bunting Macks' alleged breaches provided a basis to order specific performance).

obligation to close was extinguished." Mot. at 4. It did not. The Final Report accepted Horton's allegation that as of the filing of the Complaint, "[t]he outside closing date ha[d] passed" without Horton "deliver[ing] a Phase II Approvals Election Notice to extend [it]," and further explained that "Horton did not close on its purchase of Phase II within the 45-day cure period provided in the Agreement . . . ." Final Report at *3, *5 n.6. Horton also fails to explain how the Final Report misapplied the law to those facts. Horton now argues that February 5, 2024 was the "true outside closing deadline"[3] and filing the Complaint one week before that date excused Horton from "deliver[ing] a Phase II Approvals Election Notice . . . ."[4] But Horton cites no authority to support its position that filing the Complaint suspended the parties' obligations under the Agreement.[5]

---

[3] Mot. ¶ 8. Horton did not raise this argument in its briefing on the motion for partial judgment on the pleadings. In fact, during oral argument, Horton conceded that the Phase II Outside Closing Date was "the date by which the closing must occur." *D.R. Horton, Inc. - New Jersey v. Bunting Macks LLC*, C.A. No. 2024-0070-BWD, at 38 (Del. Ch. May 29, 2024) (TRANSCRIPT), Dkt. 55. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[4] *See* Mot. ¶ 10 ("Because Horton filed before the end of its cure period, before Bunting Macks terminated the Agreement, and before the parties' obligation to close was extinguished, it is unclear why Horton would have needed to deliver a Phase II Approvals Election Notice, either before the original outside closing date or before the expiration of the cure period.").

[5] Horton argues that extending the Phase II Outside Closing Date would have been futile once it filed the Complaint because "[t]rial is scheduled for December 3, 2024, beyond the 180-day extension Section 6(b) affords." Mot. ¶ 11. But Horton could have sought an

Accordingly, the Motion for Reargument is denied.

## II.    SUBJECT MATTER JURISDICTION

The Court has an "independent obligation to consider whether it has subject matter jurisdiction," even if the parties have not raised the issue. *Naughty Monkey LLC v. Marinemax Ne. LLC*, 2010 WL 5545409, at *3 n.35 (Del. Ch. Dec. 23, 2010). The Court of Chancery is a court of limited jurisdiction. Title 10, Section 342 of the Delaware Code states that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." 10 *Del. C.* § 342. This Court "maintains subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable

---

expedited trial prior to the extended Phase II Outside Closing Date, or the parties could have agreed to an extension to avoid a breakneck schedule. *See, e.g., Tiffany & Co. v. LVMH Moet Hennessy-Louis Vuitton SE*, C.A. No. 2020-0768-JRS, at 52 (Del. Ch. Sept. 21, 2020 (TRANSCRIPT) (explaining on a motion to expedite that "relevant factors in the balancing of how fast to go in cases like this are the outside or drop-dead date and other contingencies that might make it necessary to decide the matter by a date certain[,]" but noting that the buyer had agreed that "'if the Court were to determine that [the buyer] was not entitled to refuse to close under the terms of the Agreement as of the Outside Date, [the buyer] would agree to specific performance at that time'"); *Akorn, Inc. v. Fresenius Kabi AG*, C.A. No. 2018-0300-JTL, at 31-32 (Del. Ch. May 2, 2018) (TRANSCRIPT) (noting on a motion to expedite, in response to the Court's concerns that a scheduling ruling could eliminate the prospect of specific performance, that the buyer would not rely on the passing of the outside date).

remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'" *Smith v. Scott*, 2021 WL 1592463, at *14 (Del. Ch. Apr. 23, 2021) (citation omitted). "Chancery jurisdiction is not conferred by the incantation of magic words[,]" and simply asking for an equitable remedy is not an "open sesame" to equity jurisdiction. *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (first quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987); and then *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991)). Rather, "'[i]f a realistic evaluation [of the pleadings] leads to the conclusion that an adequate remedy is available, this court, in conformity with the command of Section 342 of Title 10 of the Delaware Code, will not accept jurisdiction over the matter.'" *Id.* at *3 (quoting *McMahon*, 532 A.2d at 603).

After concluding that specific performance is not an available remedy under the Agreement, the Final Report instructed the parties to submit supplemental memoranda addressing the basis for the Court's subject matter jurisdiction. The parties now dispute whether Horton's additional requests for equitable remedies support the Court's continuing exercise of subject matter jurisdiction.

Horton contends that Counts III and IV and aspects of Count II seek additional equitable remedies that support the Court's subject matter jurisdiction. Pl.'s Supp.

Br. at 2-3. Those counts concern a recorded Joint Development and Reciprocal Easement Agreement (the "Declaration"), which permits a "Bunting Affiliate" to expand and share the pump station and force main (the "Pump Station System") for Coastal Villages, "provided such Bunting Affiliate enters into a cost sharing and easement agreement to share the cost of the construction." Compl. ¶ 30. The Complaint alleges that Bunting Macks has submitted plans for a Pump Station System that will service not only Phases II through IV of Coastal Villages, but also a neighboring property, "Downey/Hickman," being developed by Bunting Macks affiliate Roxana Road LLC ("Roxana"). *Id*. ¶¶ 31-35. Horton contends Bunting Macks' plans will expand the force main in Phase I, requiring Bunting Macks and Roxana to "enter into [a] cost sharing agreement" with Horton. *Id*. ¶ 52.

In addition, the Declaration grants Horton and Bunting Macks a reciprocal temporary access easement for "vehicular ingress, egress, and circulation between and among the Phases." Compl., Ex. H § 2.3. According to the Complaint, Roxana has submitted development approvals seeking to use a planned interconnection for Coastal Villages (the "Interconnection") to connect Phase II to Downey/Hickman. Compl. ¶ 46. The Complaint alleges that the Interconnection improperly "encumbers" Phase II and may harm Phase I by "provid[ing] unwanted traffic and

encourag[ing] misuse of amenities, increasing management costs and devaluing the lots within [Coastal Villages]." *Id*. ¶¶ 48-49.

Count II seeks "an injunction preventing Bunting Macks from processing plans for the Pump Station System unless a Bunting Affiliate exercises its rights under the Declaration and complies with its [cost sharing] obligations thereunder." *Id*. ¶ 60. Count III alleges that Bunting Macks and Roxana will be unjustly enriched by the Interconnection and the Pump Station System. *Id*. ¶ 63. Count IV asserts a claim against Roxana for tortious interference with contractual relations and seeks to "enjoin Roxana . . . from pursuing plans and approvals based in any way on the Interconnection or Pump Station System, and from proceeding with construction of the Interconnection or with any development based on approvals obtained using development plans showing the Interconnection or Pump Station System." *Id*. ¶ 74.

Horton's requests for equitable relief premised on the Pump Station System and the Interconnection are insufficient to create subject matter jurisdiction. Notwithstanding Horton's purported request to enjoin Bunting Macks from proceeding with plans for the Pump Station System, the Complaint makes clear that Horton's claim is monetary—Horton alleges that Bunting Macks' plans will expand

the Pump Station System[6] and seeks to require Bunting Macks and Roxana to share in the increased costs.[7] A court of law can determine whether cost sharing is required under the Declaration and award damages if appropriate. *See Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *8 (Del. Ch. Feb. 2, 2023) ("[A] request for an injunction will not invoke this Court's subject matter jurisdiction if the plaintiff has an adequate remedy at law."); *Hillsboro Energy, LLC v. Secure Energy, Inc*., 2008 WL 4561227, at *2 (Del. Ch. Oct. 3, 2008) ("A simple contract claim lacking the requisite equitable hooks will not swing open the doors of equity[.] [The plaintiff] does not provide sufficient reason for me to believe that a legal remedy will not be 'sufficiently adequate.'" (footnote omitted)).

---

[6] Horton alleges that "Bunting Macks's proposed Pump Station System design will require the force main in Phase I (currently under development by Horton) to increase in size." Compl. ¶ 33. Bunting Macks responds that it "contemplate[s] constructing a forcemain that conforms to the original Phase I plans and shouldering the entire cost of constructing a Pump Station System to serve their properties in Phases II-IV and Downey/Hickman[,]" but "[t]o the extent necessary, Defendants have repeatedly stated that they would enter into a cost sharing agreement concerning an increased-capacity Pump Station System, and would compensate Horton as may be necessary, commensurate with any burden on Phase I." Defs.' Supp. Br. at 11.

[7] *See* Pl.'s Supp. Br. at 3 ("Without Court intervention, Defendants will burden Phase I with development approvals that require Horton to build entrances and infrastructure for the benefit of the later Phases and for a second development on Roxana Road's property, *without any just compensation* to Horton." (emphasis added)); *id*. at 12 (same).

As for the Interconnection, Horton's contention that the Interconnection improperly "encumbers" Phase II is premised on Horton's ability to close on Phase II, a proposition the Final Report rejected.[8]  And the allegation that the Interconnection could harm Horton's interests in Phase I likewise does not support injunctive relief, notwithstanding Horton's incantation of the words "quiet title."[9] For one, a court of law can interpret Horton's rights under the Declaration; again, there is no reason that Horton's challenge to the Interconnection based on the

---

[8] Horton argues that it still "has standing to challenge the Interconnection under Section 15(c) of the Agreement[,]" which states:

> [F]rom and after the final Closing hereunder or any termination of this Contract and for a period of twelve (12) months following the final Closing hereunder, each party shall have the right to pursue its actual (but not consequential or punitive) damages against the other party for: (1) a breach of any covenant or agreement contained herein that is performable after or that expressly survives the final Closing or termination of this Contract (including the indemnification obligations contained in this Contract), and (2) a breach in any material respect of any representation or warranty in this Contract.

Pl.'s Supp. Br. at 18; Compl., Ex. A § 15(c).  The availability of damages under Section 15(c) does not support equitable jurisdiction.

[9] *See* Pl.'s Supp. Br. at 3 ("Horton's Count II seeks to void the Phase II Plans showing the Interconnection and Pump Station System, and in doing so also effectively seeks to quiet Horton's title in Phase I." (citing Compl. ¶¶ 53-61)); *id.* ("[I]f specific performance is unavailable under the Agreement, Horton's need to quiet title and for injunctive relief as the Phase I owner is even greater."); *id.* at 11 ("In seeking to void the Phase II plans, Horton seeks in essence to quiet its title in Phase I, which provides yet another basis for equitable jurisdiction[.]").

Declaration cannot be resolved through a declaratory judgment.[10]   *See, e.g.*, *Clevenger v. Insight Bldg. Co., LLC*, 2023 WL 8997734, at \*4 (Del. Ch. Dec. 28, 2023) ("[W]hile the [Petition] includes the 'magic words' of certain equitable remedies in an attempt to invoke equity jurisdiction, the Superior Court can grant a full, fair, and complete remedy" through a declaratory judgment."), *R & R approved by*, 2024 WL 115879 (Del. Ch. 2024).   Moreover, Horton's allegation that the Interconnection may provide unwanted traffic and encourage misuse of amenities in Phase I is too speculative to support injunctive relief at this time.[11]  *See In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1211 (Del. Ch. 2022) (granting motion to dismiss for lack of subject matter jurisdiction where the "plaintiffs ha[d] not shown at this point . . . any basis for a prophylactic permanent injunction"); *see also Kroll v. City of Wilm.*, 2023 WL 6012795, at \*6 (Del. Ch. Sept. 15, 2023) ("[B]ecause the harm against which the plaintiff seeks protection is

---

[10] Horton suggests that its unjust enrichment claim is equitable, but "unjust enrichment is historically a legal, not an equitable, claim.  The absence of an adequate remedy at law is required only if an unjust enrichment claim is brought in the Court of Chancery and there is no other independent basis for equitable jurisdiction." *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 391 (Del. 2023) (footnote omitted).

[11] As Bunting Macks points out, the Interconnection ultimately will become a public road. Defs.' Supp. Br. at 19.  Thus, this theoretical harm to Horton could exist only after the Interconnection is constructed but before it is dedicated to the town.

speculative, the . . . [i]njunction may not serve as a basis for this court to assert subject matter jurisdiction.").

Because this Court lacks subject matter jurisdiction over Horton's remaining claims, the Complaint should be dismissed with leave to transfer.

## III.   CONCLUSION

For the reasons explained above, the Motion for Reargument is denied.  I further recommend that the Court dismiss the Complaint for lack of subject matter jurisdiction, with leave to transfer to the Superior Court pursuant to 10 *Del. C.* § 1902.  This is a final report under Court of Chancery Rule 144.  The stay of exceptions is lifted; exceptions to this final report and all prior reports must be filed within eleven days.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:    All counsel of record (by File & ServeXpress)